John R. JOHNSON, Plaintiff,

v.

UNITED STATES GOVERNMENT, Defendant.

Civ. A. No. 3703–M.

United States District Court
E. D. Virginia,
at Alexandria.

Sept. 9, 1966.

2. (R. 109–131.)

John R. Johnson, pro se.

John D. Schmidtlein, Asst. U. S. Atty., Alexandria, Va., for defendant.

## MEMORANDUM OPINION

OREN R. LEWIS, District Judge.

This is a suit brought by the plaintiff against the United States under the Federal Tort Claims Act, seeking damages for injuries sustained from a stabbing and a subsequent beating inflicted by two different inmates while confined in the United States Penitentiary at Lewisburg, Pennsylvania.

The plaintiff is now in the Lorton Reformatory, Lorton, Virginia. He was transferred there subsequent to the alleged assaults.

The plaintiff prepared the complaint and originally filed it in the United States District Court for the District of Columbia. Leave was there granted to proceed in forma pauperis.

Upon hearing, that court transferred the case to this court.[1]

Motion was here made for the appointment of counsel. The motion was denied, the Court being of the opinion that it should neither ask nor require attorneys[2] to represent indigent plaintiffs in such cases, either on a fee or contingent basis.

The Court did attempt to procure counsel for the plaintiff through the Legal

---

1. The complaint and subsequent pleadings prepared by the plaintiff indicate the writer has more than a passing acquaintance with the law.

2. Members of the bar of this Court contribute generously of their time in representing indigents in § 2255 and habeas corpus proceedings in both this and the appellate court.

Aid Society of the District of Columbia and of Alexandria, Virginia, the American Civil Liberties Union, the Health, Education and Welfare Department of the Government, Georgetown University Law School and other sources, all without success.

All documents and witnesses requested by the plaintiff, including prison inmates and officials, were subpoenaed at government expense. The plaintiff was given every opportunity to present his side of the case and was given such assistance by the Court as was reasonable and proper in his cross examination of government witnesses.

The material facts are not in dispute. The Government admits both the stabbing and the subsequent beating in the hospital section of the prison. The plaintiff admits that his allegation that the officials of Lewisburg had been warned by letter that he would be killed if not taken out of the general prison population was based solely on hearsay. (The prison officials denied receiving such a letter or having any knowledge of the alleged threat.)

The prison records that were introduced in evidence disclose that Johnson at the time of the initial stabbing (March 2, 1963) was a twenty-one year old, single, Negro, from Washington, D. C., then serving a three to ten-year sentence in the Lewisburg Penitentiary for robbery. His delinquency history extends back to around the age of ten. He has been in almost continuous confinement since that time. He started at the Industrial Home School in Washington, and in 1954 he was committed to the National Training School. In 1957 he was transferred to Petersburg after a sexual assault on another inmate at that school. While still in the A/O unit at Petersburg, he banded together with other aggressive District of Columbia Negroes and attempted to force white inmates into homosexual acts. He was immediately transferred to Danbury where the same type of behavior continued. In October 1958 he was in segregation for fighting with another inmate after approaching him for homosex-

ual purposes. On April 7, 1959 he was involved with a gang who assaulted white inmates. A month later he ran out of his cell and attempted to assault a lieutenant. He was held in administrative segregation from April until December because of fear of retaliation against him by Puerto Rican inmates in the population.

On December 7, 1959 Johnson was sent back to the Training School. Reports from the Training School revealed he maintained a good adjustment until his sentence was vacated by the court on August 1, 1960. Two months later he committed the offense for which he is now serving time and was sent to the District of Columbia Reformatory at Lorton. In May of 1961 he sexually assaulted an inmate at Lorton, resulting in his transfer to Lewisburg on October 3, 1961.

After arriving at Lewisburg, Johnson was involved (December 5, 1961) with a group of aggressive Washington, D. C. colored youths who were then having difficulties with some of the white inmates. On August 16, 1962 Johnson was again involved in an incident between Black Muslims and other Negroes. With the exception of those two incidents Johnson's behavior at Lewisburg prior to the stabbing was reasonably good.

The evidence [in this case] discloses that Johnson was stabbed with an improvised knife on the stairway leading from the auditorium to the main corridor as he was leaving the movies with his buddies Cleveland Scott and Charles Jones. A homemade knife, about twelve inches in length, covered with blood, was found on the stairs by a guard a few minutes after the stabbing. Johnson says he does not know who stabbed him and cannot imagine why anyone would want to. Neither Scott nor Jones saw the stabbing or the knife. They claim they merely helped Johnson to the hospital after he had been stabbed.

A day or so prior to the stabbing Johnson approached a white inmate by the name of Miller in the paint shop at the request of Scott. He then thought that Miller had an "attitude" against him.

Inmates Miller, Hayes, Maila and Burchell (white) left the movies shortly after Johnson left. Miller admitted to the prison officials that he had a knife with him at the movies but denied he had stabbed Johnson. He says he gave the knife to Burchell about thirty minutes before the stabbing incident. Miller identified the weapon used on Johnson as being the one he had given Burchell.

Burchell, a friend of Miller, voluntarily gave a sharpened kitchen knife to a prison official the next evening, stating that he had it for protection. He told the guard he was the one who had stabbed Johnson on the stairway leading from the auditorium. He claimed the incident related back to the previous Thursday or Friday when Johnson and Scott made several approaches toward Miller, saying they wanted to make a "punk" out of him. As they [Miller, Hayes, Maila and Burchell] were leaving the movies, Burchell claims he came face to face with Johnson who then had a knife in his hand. He says Johnson made a swing at him, whereupon he automatically reached in his pocket, got the knife he had received from Miller, spun Johnson around, and stabbed him in the back as he was turning.

Johnson denies he had a knife and says the stabbing could not have happened the way Burchell says it did because no one could slip up behind him without his knowing it.

A prison inmate informant, who claims to have seen the stabbing, told one of the guards that Miller did the stabbing.

Johnson was taken to the prison hospital by Scott and Jones. He was immediately admitted and placed in a private room for treatment. The door was left unlocked at the request of the prison doctors. No inmates are allowed in the hospital except those receiving treatment and those assigned work duties. The hospital is separated from the general prison population by a locked gate constantly attended by a guard.

Shortly after being treated for his stab wound Johnson was assaulted in his room by one of the hospital clerks, a white inmate named Darnell. Darnell struck Johnson four or five times with a heavy steel rod [3], inflicting deep cuts in his scalp, under his eyes and across his hands. Ten or twelve sutures were needed to close the wounds. Darnell was pulled off Johnson by an inmate then occupying an adjacent room.

Darnell readily admitted the assault. He stated Johnson had not approached him in any way but had been bothering many of his friends and his intention was to kill Johnson.

After treatment of the wounds inflicted by Darnell, Johnson was placed in isolation for several days for his own protection. He was then returned to the hospital and again placed in a room by himself. The door was then kept locked.

Johnson did not prefer charges against Darnell for the beating or against anyone re the stabbing. He said he figured he could take care of himself. Suspecting that he would be transferred to another institution, Johnson told the deputy warden he did not want to go to Atlanta or Leavenworth and requested that he be sent back to the District of Columbia. He was subsequently transferred to the Lorton Reformatory as soon as he was well enough to be moved.

Johnson made a good recovery from both the stabbing and the injuries resulting from Darnell's beating. He was examined, by consent, at the conclusion of this trial by a staff doctor at the District of Columbia General Hospital. This examination disclosed there was no evidence of trauma and no injury to the urinary tract except for some hesitancy of urination. No apparent permanency except for the scar. Physical examination was essentially normal with no apparent sequellae to the stab wound. Nose surgery will be performed at the District of Columbia Jail as soon as a hospital room is available. Johnson's complaints of considerable pain and suffering from

---

3. The steel rod came off of a piece of equipment in the hospital.

both the stabbing and beating injuries during treatment and convalescence are not questioned by the Government.

■ To recover, Johnson must prove negligence on the part of prison officials charged with the duty of keeping him safely and free from harm. The duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, the pertinent portions of which provide as follows:

\* \* \* \* \* \*

"(2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;

"(3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." See United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805.

■ It is here claimed that the warden was negligent in classifying Johnson as fit for the general prison population, and in any event that Johnson should have been taken out when the warden received the anonymous threat on his life. We disagree. The warden is given a broad discretion in classifying prisoners. Although Johnson's juvenile record was not good, the Training School records indicate he maintained a good adjustment therein from December of 1959 until his sentence was vacated in August of 1960. His behavior at Lewisburg prior to the stabbing was reasonably good.[4] The fact that he had a reputation as a homosexual and had been charged with previous sexual assaults in other institutions is not enough to require that he be taken out of the general population and kept locked in a cell. See Fleishour v. United States, ante. Johnson himself claims that his earlier misconduct in the other institutions was occasioned by his then immaturity.

Johnson's charge that the warden had been warned that he would be killed if not taken out of the general population is not supported by any creditable evidence. Neither was there any evidence that the warden had any knowledge that Johnson had approached Miller in the paint shop several days before the stabbing or that Johnson thought that Miller had an "attitude" against him.

■ Clearly, the United States is not liable in damages for the injuries Johnson received from the stabbing inflicted by a fellow inmate under the circumstances here described. See Cohen v. United States, D.C., 252 F.Supp. 679.

The more difficult question in this case arises from the beating suffered by Johnson during the time he was in the prison hospital convalescing from the stab wound. Johnson contends the prison officials were negligent in not keeping him safe from the other inmates who he claims were out to kill him. Specifically, he claims the warden should have kept the door to his hospital room locked so that none of the other inmates could have gotten to him.

■■ The duty of the warden to keep the prisoners entrusted to his care and custody safely is not absolute. It only requires the exercise of ordinary diligence under the circumstances. See Asher v. Cabell, 5 Cir., 50 F. 818. When gauged by this standard the Court cannot say the warden was negligent in not keeping the door to Johnson's hospital room locked.

The hospital was a building apart from the other prison buildings. The general prison population could gain admittance only by pass, and then through a locked gate constantly attended by a guard. Only prison officials and hospital attendants, including assigned inmates, were allowed inside.

Johnson was assaulted by one authorized to be in the hospital, not by an in-

---

4. It is the accepted practice at most prisons to give prisoners the opportunity of a fresh start at the transferee institution and not to treat them as troublemakers unless they warrant it by their conduct at that institution. See Fleishour v. United States, D.C., 244 F.Supp. 762.

mate who gained admittance through negligence on the part of the warden. Darnell, the inmate clerk who assaulted Johnson, could have gotten to him whether the door to Johnson's room was locked or unlocked. He had free access to that part of the hospital.

There is no evidence in this case that the warden had any idea or reason to believe that Darnell, or any other inmate then assigned to hospital duties, would harm Johnson or any other inmate brought to the hospital. Neither is there any evidence or charge that the warden was negligent in assigning Darnell to hospital work.

Had the assault on Johnson in the hospital room been inflicted by a government employee instead of by another inmate the United States would not be liable under the Federal Tort Claims Act [assault exception], 28 U.S.C. § 2680(h). See Panella v. United States, 2 Cir., 216 F.2d 622; Muniz v. United States, 2 Cir., 305 F.2d 285.

■ To say that Johnson is entitled to recover solely because he was assaulted by a clerk inmate while in an unlocked hospital room would make the United States an insurer of his safety. Such is not the law. To recover, Johnson must prove the warden was negligent in exercising his statutory duty of keeping him (Johnson) safely during his confinement in the prison hospital. This he has failed to do. Even if there be negligence on the part of the Government in this case, Johnson would be barred from recovery by his own acts

■ The record clearly shows that Johnson had approached and bothered other inmates a day or so prior to the stabbing. A prisoner cannot instigate trouble with other inmates and then demand compensation from his keeper for injuries resulting therefrom.

The Court further finds Johnson's injuries were not aggravated by his being placed in segregation following the Darnell assault in the hospital and that he received adequate and proper medical attention while there confined. (During the trial Johnson claimed no injuries resulting from his being put in segregation.)

An appropriate order dismissing the complaint will be forthwith entered.

The plaintiff may timely note his appeal to the United States Court of Appeals for the Fourth Circuit if he be aggrieved by this decision.

The Clerk will send a copy of this memorandum opinion, together with the order dismissing the bill of complaint, to the prisoner and the United States Attorney for this District.