**Ernest MIDDLETENT, Plaintiff,**

v.

**The UNITED STATES of America, Defendant.**

**Civ. 69–132C.**

United States District Court, D. South Dakota, C. D.

April 28, 1970.

A. P. Fuller, of Morgan & Fuller, Chamberlain, S. D., for plaintiff.

R. D. Hurd, Asst. U. S. Atty., of Sioux Falls, S. D., for defendant.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

Plaintiff, Ernest Middletent, brings this action against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 *et seq.*, to recover for injuries which he sustained when kicked by a fellow prisoner while incarcerated in a jail operated by the United States Bureau of Indian Affairs at Fort Thompson, South Dakota. The plaintiff contends that the United States was negligent in failing to prevent the assault.

Plaintiff Middletent is a Sioux Indian enrolled as a member of the Crow Creek Sioux Tribe. He lives on the Crow Creek Indian Reservation at Fort Thompson. On the evening of August 10, 1968, Middletent and a companion were arrested for public intoxication by a Bureau of Indian Affairs policeman and placed in a jail cell known by police and frequent occupants as the "drunk tank." Although actually arrested for public intoxication, the plaintiff and all persons arrested under similar circumstances are charged with "disorderly conduct" as the Code of Federal Regulations, 25 C.F.R. § 11.49, does not establish public intoxication as a separate offense.

At about midnight, several more intoxicated Indians were placed in the cell with Middletent. Estimates of the number of occupants of the 10′ x 14′ cell at this time ranged from 12 to 15 persons. Shortly after being placed in the cell, one of the latecomers, later identified as Pat Heart, kicked the plaintiff Middletent several times in the head and chest until warned to stop by other prisoners in the cell. At the time he was kicked, Middletent was lying on the floor of the cell trying to sleep. Although the testimony is in dispute as to when, and if, Middletent requested medical assistance, he was treated by a Public Health Service physician in a nearby community on Tuesday, August 13, 1968.

The jail is manned at all hours of the night by a jailer who also serves as the radio operator. His duty station is located about 60 feet from the jail cell in which Middletent was placed, but within hearing distance. The plaintiff testified that neither he nor anyone else called for help.

The United States Supreme Court has recently held in a similar fact situation in Muniz v. United States, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963), that a prisoner in a federal institution can bring suit under the Tort Claims Act, 28 U.S.C. § 1346(b), to recover for personal injuries sustained in an assault by a fellow prisoner. Although the Eighth Circuit Court of Appeals had

previously held in James v. United States, 280 F.2d 428 (8th Cir. 1960), cert. denied 364 U.S. 845, 81 S.Ct. 88, 5 L.Ed.2d 69 (1960), and Lack v. United States, 262 F.2d 167 (8th Cir. 1958), that a prisoner could not sue under the Tort Claims Act for injuries sustained as a result of negligence of prison officials or employees, the decisions were based largely upon the rationale of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which the Court in *Muniz* held to be inapplicable to the present situation. Since the *Muniz* decision, several actions have been brought by prisoners under the Tort Claims Act. Most have been unsuccessful. Muniz v. United States, 280 F.Supp. 542 (S.D.N.Y.1968); Johnson v. United States Government, 258 F.Supp. 372 (E.D.Va.1966); Fleishour v. United States, 244 F.Supp. 762 (N.D.Ill.1965), aff'd 365 F.2d 126 (7th Cir. 1966), cert. denied 385 U.S. 987, 87 S.Ct. 597, 17 L.Ed.2d 448 (1966). *Contra* Cohen v. United States, 252 F.Supp. 679 (N.D.Ga. 1966).

The test which the plaintiff must meet in this action was stated in *Muniz* to be "whether a private individual under like circumstances would be liable under state law." 374 U.S. at 153, 83 S.Ct. at 1853. *Cf.* 28 U.S.C. §§ 1346(b), 2674. Turning then to South Dakota law, the Court has discovered that in Blakey v. Boos, S.D., 153 N.W.2d 305 (1967), the South Dakota Supreme Court has recently considered a situation so similar to the present case that it is clearly dispositive of the law to be applied in the present case. In the *Blakey* case, a former prisoner in a county jail brought suit against the sheriff and deputy sheriff to recover for a severe eye injury which he sustained when struck in the eye by a fragment of a glass bottle which a fellow prisoner had thrown against the cell bars. The court concluded that the plaintiff's right to recover was predicated upon general negligence principles, stating that "while the officer is not an insurer of the safety of his prisoners he has a duty to protect them from injury which he should have reasonably foreseen or anticipated."

Having determined the duty which the police owed to the plaintiff, the Court must then determine whether the police have breached their duty in this case. The critical question then becomes whether the police should have reasonably foreseen that the confinement of 12 to 15 intoxicated persons in the drunk tank would create an appreciable risk of harm to the plaintiff. A second determination must be made as to whether the police should have foreseen that the prisoner who assaulted the plaintiff would become violent and cause injury to other prisoners in the cell.

In considering the basis for civil recovery against the sheriff in *Blakey,* the court quoted with approval the general rule expressed in an annotation in 14 A.L.R.2d at 362:

In order to hold an officer in charge of a jail or prison liable for any injury inflicted upon one prisoner by another prisoner, the courts have held generally that there must be knowledge on the part of the officer that there is danger that such injuries will be inflicted, and he must be guilty of negligence in failing to prevent the injury.

The South Dakota decisions have often stated that there is no duty to guard against an event or injury which a reasonably prudent man under the circumstances would not anticipate as likely to happen. Ford v. Robinson, 76 S.D. 457, 80 N.W.2d 471, 473 (1957); Daniels v. Moser, 76 S.D. 47, 71 N.W. 2d 739 (1955); Doyen v. Lamb, 74 S.D. 126, 49 N.W.2d 382 (1951). *See also* Hale v. Montana-Dakota Utilities Co., 192 F.2d 274 (8th Cir. 1951) (opinion by Chief Judge Gardner).

The testimony of various witnesses indicated that the drunk tank and other cells at the Fort Thompson jail are frequently crowded on nights when the reservation warriors attending a pow-wow have become inflamed by the beat of the

tom-toms and the consumption of fire-water. Captain Cruse, the police chief, testified that a total of 49 persons were placed in the Fort Thompson jail during the night in question. The jail has six cells, one of which is maximum security, which contain beds for 24 males and four females. Forty-eight were apparently placed in five cells and one who had caused a disturbance was placed by himself in the maximum security cell. The police chief, who had been at Fort Thompson for five years, further testified that on the numerous occasions in the past when the drunk tank was crowded, the occupants went to sleep without incident.

Captain Cruse and the officers on duty on this night testified that the prisoner who kicked the plaintiff was not known as a fighter and had not shown any violent or aggressive tendencies when placed in the cell. As previously mentioned, the only prisoner thought to be of danger to other prisoners was placed in the maximum security cell.

Officer Cadwell stated that he had turned on the light and checked the drunk tank and other cells when he came on duty at 1:00 a. m., and had not noticed anything unusual. The plaintiff was lying down and appeared to be asleep, but the officer could not see his face. Pat Heart, the person who kicked the plaintiff, was also lying down. Most of the prisoners were sleeping.

One of the witnesses for the plaintiff testified that in his apparently numerous overnight stays in the jail, there had been fights between prisoners on two occasions. Captain Cruse testified that he was aware of the "squabbles" related by the witness, but stated that these were the only fights of which he had become aware in his five years as police chief. He testified that when there had been calls for help from persons in the cells, the officer on duty had given assistance. The plaintiff and other witnesses testified that none of the persons in the drunk tank had called for help when the plaintiff was kicked.

 The Court is of the opinion that the evidence is insufficient to warrant a finding that the police knew or should reasonably have foreseen that the confinement of 12 to 15 persons in the drunk tank would create an appreciable risk of harm to the plaintiff. Similarly, the evidence does not support the contention that the police knew or should have reasonably anticipated that Pat Heart would become violent and assault other prisoners in the drunk tank.

Having determined in accordance with the South Dakota decisions that the police officers were not negligent, it is the decision of the Court that the plaintiff, Ernest Middletent, is not entitled to recover against the United States in this action.

The above shall constitute the Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.