James A. SUMMERS, Jr., Appellant,

v.

R. F. HORTON et al., Appellees.

No. 14130.

United States Court of Appeals,
Fourth Circuit.

Argued June 1, 1970.

Decided June 7, 1971.

Adam Stein, Charlotte, N. C. (Conrad O. Pearson, Durham, N. C., Jack Greenberg and Michael Meltsner, New York City, and Chambers, Stein, Ferguson & Lanning, Charlotte, N. C., on brief), for appellant.

Jay F. Frank and Jack R. Harris, Statesville, N. C. (Chamblee, Nash & Frank, Raymer, Lewis & Eisele, and Collier, Harris & Homesley, Statesville, N. C., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, SOBELOFF, Circuit Judge, and WIDENER, District Judge.

HAYNSWORTH, Chief Judge:

In his appeal from a judgment for the defendants after a trial to the court, the plaintiff contends that the court erred in failing to find the commission by the defendants of a deliberate or negligent wrong. We affirm.

The action is founded on alleged violations of 42 U.S.C.A. §§ 1981, 1983 and 1988 by the defendants, police officers of Statesville, North Carolina and the sheriff and jailer of Iredell County, North Carolina, in wilfully causing injuries to, or failing to prevent injury to, the plaintiff at a time when he was in

their custody. A conspiracy is also alleged.

The District Judge made detailed findings of fact.

On the night of August 19, 1966, Summers was arrested, while highly intoxicated, by two Statesville police officers. At that time, Summers was in good physical condition, apart from his drunkenness. He was not injured in any way during his arrest and transportation to the county jail.

On arrival at the jail Summers was booked for public drunkenness and allowed to telephone a bail bondsman, who arranged to post bond the following morning. Thereafter he was routinely searched and placed in a twelve-man cell block by the defendant Shoemaker, the jailer then on duty.

At some time after he was placed in the cell block, Summers was attacked and beaten by other inmates, inflicting serious bodily injuries. Although a friend of Summers, Lewis Bradshaw, testified that during the beating he and other inmates cried out for help, neither Shoemaker nor an inmate trusty in a cell above Summers' cell heard any outcry, although the windows were open and an intercom system between the cell block and the office was in operation. Neither Bradshaw nor any other inmate called Shoemaker's attention to Summers' beating on any of the ten later occasions that night on which he entered the cell area, on three of which he admitted other prisoners to the same cell block. Shoemaker saw no indication of anything amiss while going about his duties.

On the morning of August 20, when the bondsman arrived, Shoemaker entered the cell block area and called for Summers. He appeared at the cell door with a swollen eye and with blood on his face and clothing. On inquiry by Shoemaker, he said that he had been beaten by other inmates but could not, or would not, state the names of his assailants. Nor would any other inmate state who was responsible. On Summers' release, he was admitted to a hospital, where he remained until September 17. The extended hospitalization was necessitated principally by delirium tremens brought on by alcohol withdrawal and not by his injuries.

At the close of all the evidence the district judge found in favor of the defendants. Summers concedes that, as to the two police officers, the evidence justified a finding of no liability. He also concedes, properly, that the evidence failed to show a conspiracy. However, he argues that the judge erred in refusing to allow him to reopen his case after he had rested in order to present testimony by his brother, claimed to be newly discovered. The judge, recognizing that the request was properly addressed to his discretion, declined the proffer. We find no abuse of that discretion.

With respect to Shoemaker, Summers contends that the finding of no liability is erroneous. Three arguments are presented in support of this contention —that Shoemaker was negligent in failing to prevent the beating, that he negligently failed to halt it once it started, and that he was negligent in waiting until morning without providing medical attention. The short answer to all of these claims, is that they are based on factual premises directly contrary to the factual findings of the district judge, which are not clearly erroneous.

Two reasons are assigned for the claim of negligence in Shoemaker's failure to prevent the attack. First, Shoemaker is claimed to have placed Summers in a dangerous position by assigning him to the same cell as his assailants. This argument would have merit if there had been reason to suspect that the other inmates were prone to violence. No such reason was shown. There had been no occurrence of violence or disorder in the jail for more than a year before Summers was assaulted, and none of the inmates already in the cell block were known to have histories of or propensities toward violent behavior.

■ Second, Summers argues that it was negligent for Shoemaker to place him in a cell block already filled to capacity. By creating an overcrowded condition in the cell, Shoemaker is claimed to have created a situation likely to result in violence. We need not consider the legal basis for this argument, as it is without factual support. The trial judge found that there were twelve men in the cell block, including Summers and his assailants, at the time of the assault. That was the number for which it was designed.[1]

■ Summers next contends that, even if Shoemaker was properly absolved of liability for the assault itself, he was derelict in his duty in failing to stop it when Summers and other inmates cried out for assistance. The argument, of course, assumes that such an outcry occurred, which is contradicted by the judge's findings. The only testimony on which the claim is based is that of Lewis Bradshaw, who claimed to have shouted for help for some time without

response. Yet Shoemaker never heard an outcry, nor did Roy Lee Campbell, a trusty confined immediately above Summers' cell. When on numerous later occasions Shoemaker came into the area to admit other prisoners, Bradshaw admittedly said nothing whatever to him. In his findings of fact the judge implicitly but pointedly rejected Bradshaw's credibility, and we cannot say that there was not ample basis for that evaluation of his testimony.

■ Finally, Summers argues that Shoemaker's failure to provide prompt medical attention renders him liable for the injuries, even if he is not responsible for the beating or its continuation. Again, this argument is based almost entirely on testimony rejected as incredible by the trial judge, who found that Shoemaker had no knowledge of the assault until the following morning when he called Summers to meet the bondsman.[2] That finding is supported by the record.

Affirmed.

1. The only evidence of the number of inmates in the cell block was adduced through questioning of Shoemaker and Myers, an alternate jailer not on duty at the time. Counsel for Summers read a list of names, asking the witnesses to state from their recollection which cell block each named person was assigned to at the time. If the attack, which Summers said began immediately after he was admitted, occurred before 10:30 p. m., when another prisoner was admitted, the responses to the questions would indicate that there were between ten and thirteen persons in the cell block. If the attack occurred after 10:30, the number would range between eleven and fourteen. After 4:00 or 4:30 the following morning, when two more were admitted, the cell block clearly became overcrowded, unless some of the inmates had been released, but the attack had long since occurred by that time.

2. It is claimed by Summers that Shoemaker's testimony is inherently incredible in view of the fact that he admitted other prisoners to the cell block after the beating occurred. Summers says Shoemaker could not have failed to see him lying on the cell floor in a badly beaten condition, covered with blood. Apart from the fact that there was evidence to indicate that his injuries, although substantial, were not as serious as he claims, and that the physical evidence fails to substantiate the claim that he was "covered with blood," the claim that he was located in a position from which he must have been seen is based, like almost all of the statements of fact in his brief, on the discredited testimony of Lewis Bradshaw. The most that can be said of this contention is that the evidence is conflicting. The resolution of conflicts is for the trier of fact, not for this Court. It was certainly not clearly erroneous for the district judge to conclude, as he did, that Summers' appearance during the night was not significantly different from that of any other person sleeping off a bout with alcohol.