FRANK W. HARRIS, PLAINTIFF-RESPONDENT, v. STATE
OF NEW JERSEY; WARREN PINTO, SUPERINTENDENT
OF THE NEW JERSEY STATE PRISON AT RAHWAY,
NEW JERSEY; THOMAS OLDEN AND JOHN RAFFERTY,
DEFENDANTS-APPELLANTS.

Argued October 25, 1972—Decided December 4, 1972.

586

*Mr. Stephen Skillman,* Assistant Attorney General, argued the cause for the appellants (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General, on the brief).

*Mr. Benjamin Edelstein* argued the cause for the respondent (*Messrs. Edelstein & Edelstein,* attorneys).

The opinion of the Court was delivered by

JACOBS, J. While the plaintiff was a prisoner at the Rahway State Prison he was assaulted by a fellow prisoner and suffered injuries to his person. He filed a complaint in the Law Division against the State of New Jersey, the Prison Superintendent, a Deputy Keeper and a Wing Keeper. His complaint was grounded on negligence and he sought compensatory damages for his injuries. Depositions were taken of the plaintiff and the individual defendants; thereafter the defendants moved for summary judgments which the Law Division entered in their favor. On appeal, the Appellate Division sustained the summary judgment in favor of the State but ordered a plenary trial with respect to the plaintiff's claims against the individual defendants. 118 *N. J. Super.* 384 (1972). We granted certification on the petition of the individual defendants (60 *N. J.* 469 (1972)); there was no cross petition by the plaintiff.

The basic facts may be gathered from the depositions and there is no material dispute in this proceeding with respect to them. On April 6, 1967 the plaintiff returned to his cell at the Rahway prison after mess. His cell along with the 31 other cells on the third tier were locked through a master control operated by the defendant Wing Keeper Rafferty. According to the plaintiff's testimony, Rafferty was about "three-quarters of the way down the tier" when the cells were locked and from his spot Rafferty could not see into the plaintiff's cell. As the plaintiff entered his cell he noticed that his bed had been pushed out of place but he did not notice his fellow prisoner Brown who had apparently secreted himself in the cell. Brown repeatedly struck plaintiff with a ten-inch reamer which Brown had evidently taken from the prison machine shop. The plain-

tiff received medical attention and was later transferred to the Trenton State Prison for further examination and treatment.

The prison records contain no indication of any prior prison incident involving Brown and the defendants testified that they had no prior information which would lead them to believe that Brown was any special threat to the plaintiff or other prisoners. The plaintiff testified that he hardly knew Brown and had no reason to anticipate an assault by Brown; but he further testified that he had received an unsigned note, which actually came from Brown, requesting sexual relations which he thereafter rejected. The plaintiff unequivocally acknowledged that he did not at any time prior to the assault tell any of the defendants or anyone in authority about the note or about any incident or encounter with Brown.

The defendant Pinto testified that he is Superintendent of Rahway State Prison and is charged with general supervision of the operation of the institution. He received a report of the assault on the plaintiff but had no prior indications of threat or danger. He described the security measures at the prison machine shop where Brown had been assigned to work and stated that when prisoners were leaving the shop they were subjected to random searches for tools and other implements. He also described the security measures when prisoners were returning to their cells and expressed the hope that each of his Wing Keepers would know all of the inmates in his wing, though he acknowledged that he "wouldn't say that for sure because we have new officers from time to time who naturally would not know the inmates, unfortunately." He testified that all prison employees receive copies of the "Manual of Operations & Procedures" which contains instructions with respect to the supervision of prisoners in and out of their cells, the maintenance of records with respect to tools in the prison shops, etc. See 118 *N. J. Super.* at 387–388.

The defendant Olden is a Deputy Keeper at Rahway State Prison. He testified that he is third in command and is in charge of the correctional force at the prison. He had no knowledge of prior incidents involving Brown but acknowledged that in a maximum security institution such as Rahway it might be assumed that the inmates may have a penchant for "psychopathic activity." He stated that Rahway was operated on that assumption. While he had no personal knowledge, he assumed that when the cells in the plaintiff's tier were thrown open to allow the inmates in, Brown went into the plaintiff's cell and was there when he arrived. The defendant Rafferty testified that on the day of the assault he was the substitute Keeper of the wing in which both Brown and the plaintiff were housed. Brown was on the fourth tier whereas the plaintiff was on the tier below. Though he knew the plaintiff, he did not know Brown and did not see him enter the plaintiff's cell. He stated that there were over one hundred and twenty-five inmates in the wing, that he was never the permanent Wing Keeper, and that he had substituted there about "ten times from 1966 to 1967."

We are not now confronted with any claim by the plaintiff that he is entitled to damages from the State of New Jersey because of its alleged failure to provide suitable prison facilities for his care and safety while in custody. At the time of the attack the State was clearly immune from any ensuing tort claim by him. See *Willis v. Dept. of Conservation and Economic Development*, 55 N. J. 534, 541 (1970). The recently enacted New Jersey Tort Claims Act continues this immunity in its pertinent aspects. *L.* 1972, *c.* 45; *N. J. S. A.* 59:1-1 *et seq.* It contains a sweeping provision that neither a public entity nor a public employee shall be liable for injury caused by "a prisoner to any other prisoner" (*N. J. S. A.* 59:5-2); since this provision is effective only prospectively (*N. J. S. A.* 59:12-3) it has no application to the case at hand and we need not deal with it.

Because of the State's immunity, the Appellate Division affirmed the trial court's judgment in its favor (118 *N. J. Super.* at 389) and the plaintiff does not assert before us that there was any error in this regard. His present contention is that the individual defendants owed him a duty of due care which they negligently failed to discharge and that they are individually liable for the consequential injuries to him. See *Restatement (Second) of Torts* § 320 (1965); *Prosser, Torts* § 56, *p.* 349 (4th ed. 1971); *cf. Jackson v. Hankinson and Bd. of Ed. of New Shrewsbury,* 51 *N. J.* 230, 235 (1968); see also *Annot.,* 41 *A. L. R. 3d* 1021 (1972).

The individual defendants, represented by the Attorney General, acknowledge that the plaintiff was owed a duty of due care while in custody and that in appropriate circumstances he would be entitled to a recovery on a showing that a prison official negligently failed to discharge his responsibility for the plaintiff's care with resulting injuries to him. See *Kisielewski v. State,* 68 *N. J. Super.* 258, 262 (App Div.), *certif. denied,* 36 *N. J.* 144 (1961). But they point out that the depositions, even when viewed most favorably to the plaintiff, failed to indicate any such negligence and failed to meet the prior notice requirement which is generally adhered to by the courts when prisoners seek recovery from prison officials because of injuries suffered at the hands of fellow prisoners. See *Muniz v. United States,* 280 *F. Supp.* 542, 547 (*S. D. N. Y.* 1968); *Johnson v. United States,* 258 *F. Supp.* 372, 376 (*E. D. Va.* 1966); *cf. Summers v. Horton,* 443 F. 2d 225, 226–227 (4 Cir. 1971); *Middletent v. United States,* 311 *F. Supp..* 788, 790 (*D. S. D.* 1970); *Adams v. State, Department of Institutions,* 247 So. 2d 149, 151 (*La. App.* 1971); *Lexington v. Greenhow,* 451 *S. W. 2d* 424, 41 *A. L. R. 3d* 1018 (Ky. 1970); *Justice v. Rose,* 102 Ohio App. 482, 144 *N. E. 2d* 303, 305 (*Ohio Ct. App.* 1957).

In *Muniz* the plaintiff, a prisoner at the United States Federal Correctional Institute at Danbury, Connecticut, was assaulted by fellow prisoners and suffered serious injuries.

He brought an action under the Federal Tort Claims Act alleging negligence and seeking compensatory damages. The trial court made a finding of no negligence and entered judgment for the defendant. In the course of its opinion it noted that a prison warden "is not liable in the absence of a showing that he had reason to anticipate violence and failed to prevent it" and that "generally, in order to hold a sheriff or jailer liable for assault by one prisoner of another, the sheriff or jailer must have actual knowledge of the dangerous character of the prisoner committing the assault." 280 *F. Supp.* at 547. With respect to the adequacy of the guarding, the court stated that the warden's decision "as to the number and placement of guards" was not a matter on which it was empowered to substitute its own judgment. 280 *F. Supp.* at 548.

In *Adams* an inmate of the Louisiana State Penitentiary was attacked by another inmate. He died and his mother brought an action against Louisiana through its Department of Institutions claiming that her son's death resulted from the State's culpable negligence. It was not controverted that the penitentiary officials had no prior warning of the attack and no opportunity of preventing it. The trial court entered judgment for the State and this was affirmed in an opinion which expressed the general rule to be that, before the State or its prison officers may be held liable for injuries inflicted by one prison inmate on another, "there must be knowledge on the part of such officers in charge that such injuries will be inflicted, or good reason to anticipate such, and following that, there must be a showing of negligence on the part of these officials in failing to prevent the injury. Stephens v. Conley, 48 Mont. 352, 138 P. 189; Kusah v. McCorkle, 100 Wash. 318, 170 P. 1023, L. R. A. 1918C, 1158; Ratliff v. Stanley, 224 Ky. 819, 7 S. W. 2d 230, 61 A. L. R. 566; Riggs v. German, 81 Wash. 128, 142 P. 479; Gunther v. Johnson, 36 App. Div. 437, 55 N. Y. S. 869." 247 *So. 2d* at 151.

In *Rose* the sheriff placed Clair Justice in a cell with a fellow prisoner who attacked him causing injuries resulting in his death. His administratrix filed a complaint for damages against the sheriff charging that he was negligent and had failed to discharge his duty under an Ohio statute which provides that the sheriff shall keep his prisoners "safely." In affirming a dismissal of the complaint, the court pointed out that the statute did no more than declare the common law under which the sheriff could not be held in the absence of a showing that he "had reason to anticipate violence and that he failed to prevent it." 144 *N. E. 2d* at 305; *cf. Kelly v. Ogilvie,* 64 *Ill. App. 2d* 144, 212 *N. E. 2d* 279, 282 (1965), *aff'd,* 35 *Ill. 2d* 297, 220 *N. E. 2d* 174 (1966). In the course of its opinion the court noted that "in all the cases where liability of the officer has been sustained for injuries inflicted by another prisoner the facts show a wilful and known neglect, in that the officer failed to prevent violence, which was known, or in the exercise of ordinary care should have been known, by him." 144 *N. E. 2d* at 305. See *Cohen v. United States,* 252 *F. Supp.* 679 *(N. D. Ga.* 1966); *cf. Upchurch v. State,* 51 Haw. 150, 454 *P. 2d* 112 *(Hawaii* 1969).

The foregoing opinions embody balanced efforts to afford reasonable protections to prisoners without imposing unreasonable burdens on prison officials. Notwithstanding the promulgation of suitable regulatory procedures and controls, there is always the danger of a sudden attack as occurred here. There had been no prior warning to any of the prison officials of the impending attack, nor had they been made aware of any circumstances calling for special precautions on their part. The mere fact without more that Brown, in violation of prison regulations, had retained possession of a reamer, had entered the plaintiff's cell with it and had assaulted the plaintiff, did not establish any right on the plaintiff's part to recover damages from the prison officials. Indeed, when viewed in the context of all that

appears without contradiction in the depositions, it may fairly be said that the occurrence did not indicate any negligence on the part of Rafferty in the discharge of his ministerial functions, or any derelictions on the part of the Warden and his Deputy Keeper in the discharge of their supervisory functions.

Rafferty had nothing to do with the shop from which the reamer had been taken and he was not the permanent Keeper of the wing where Brown and the plaintiff were housed. He was merely a substitute with the responsibility of temporarily overseeing the one hundred and twenty-five inmates in the wing. Understandably, he did not know all of the inmates and he had not seen Brown, whom he did not know, enter the plaintiff's cell. The plaintiff urges that Rafferty departed from the prison regulations in allowing Brown to enter the plaintiff's cell but, as indicated in *Mobley v. State,* 1 *A. D. 2d* 731, 147 *N. Y. S. 2d* 414 (1955), such regulations are designed to govern the conduct of prison employees "from the standpoint of the prison administration" and are not designed to fix a standard of care owing to the prisoners. 147 *N. Y. S. 2d* at 416.

We find no indication in the depositions that Rafferty failed to act conscientiously or failed to act in reasonably prudent manner, considering the situation in which he had been placed. Whether the matter be viewed strictly under those cases which embody a prior notice requirement or broadly under general negligence principles, it would be wholly unjust to subject Rafferty to the plenary trial called for by the Appellate Division's opinion below. 118 *N. J. Super.* 384. And it would be equally unjust to subject the Warden and his Deputy Keeper to such plenary trial; indeed, since their only connections with the matters in issue were not ministerial but involved high administrative supervisory exercises of judgment and discretion, they are entitled to the additional protection afforded by the general doctrine which immunizes such exercises of judgment and discretion so long as they are made conscientiously and in

good faith. See *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc.,* 31 *N. J.* 124, 138–144 (1959); *Travis v. Pinto,* 87 *N. J. Super.* 263, 266–268 (*Law Div.* 1965); *State v. Ferling,* 220 *Md.* 109, 151 *A. 2d* 137 (1959); *Sheffield v. Turner,* 21 *Utah 2d* 314, 445 *P. 2d* 367 (1968); *cf. Prosser, supra at* 988–89; 2 *Harper and James, Torts* § 29.10 at 1640–46 (1956).

In *Ferling* prisoners attacked Clark while he was a fellow prisoner at the Maryland State Reformatory and as a result of his injuries he died. His parents filed a complaint for damages against the Reformatory Superintendent, charging that he negligently confined Clark with hostile inmates against whom he had testified and who inflicted the fatal injuries. The trial court sustained a demurrer to the complaint and this was upheld by the Maryland Court of Appeals. In his opinion for the court, Judge Prescott pointed out that most of the writers have classified the duties of public officers insofar as they relate to tort liability or immunity into three groups, namely, (1) political, (2) judicial and quasi judicial and (3) ministerial. He placed the Reformatory Superintendent within the second group since his duties involved extensive exercises of judgment and discretion; and he noted that where the complaint against the Superintendent is for failure properly to perform duties which called for exercises of judgment or discretion he "is immune from liability, at least, in the absence of a showing of malice." 151 *A. 2d* at 140.

In *Turner* the plaintiff, a prisoner at the Utah State Prison, was stabbed by a fellow prisoner and lost the sight of an eye. His action for damages against the State and the Prison Warden was dismissed on motion and he appealed as to the Warden alone. The Utah Supreme Court sustained the dismissal in an opinion by Chief Justice Crockett which, while expressing mindfulness of the necessity for affording measures of protection to inmates from

assaults by fellow inmates, pointed to the "imperative need" for affording to prison wardens reasonable freedoms to discharge their burdensome responsibilities of keeping large numbers of criminals in confinement and maintaining discipline among them. The Chief Justice voiced the thought that if prison wardens "are too vulnerable to lawsuits for anything untoward which may happen to inmates a number of evils follow, including a breakdown of discipline and the fact that capable persons would be discouraged from taking such public positions"; and he concluded with an expression of approval for the doctrine that wardens may not be held accountable in damage suits grounded on negligent failure to prevent assaults by inmates on other inmates so long as they have acted "in good faith and within the scope of their duties." 445 *P. 2d* at 369.

There is of course no suggestion that Prison Superintendent Pinto and Deputy Keeper Olden acted other than conscientiously and in good faith. The decision that there should be random searches of prisoners leaving the shop rather than total searches undoubtedly represented a policy determination in the light of personnel, budgetary and other pertinent considerations and limitations; and the same may safely be said with respect to the determination as to the use of substitute Wing Keepers, when necessary, as in the case of Rafferty. While the plaintiff may perhaps suggeest that these represented mistaken exercises of judgment and discretion, he has not at any point suggested bad faith or ill will on the part of the Warden or the Deputy Keeper, or for that matter on the part of Rafferty. All in all we find no just basis for continuing the proceedings against any of them. See *Bedrock Foundations, Inc. v. Geo. H. Brewster & Son, Inc., supra,* 31 *N. J.* at 138–139. In setting aside the summary judgments entered in the Law Division in favor of the individual defendants the Appellate Division erred and, accordingly, its judgments ordering a plenary

trial with respect to the plaintiff's claims against them are hereby:

Reversed.

*For reversal*—Chief Justice WEINTRAUB, Justices JACOBS, HALL and MOUNTAIN, and Judge SULLIVAN—5.

*For affirmance*—None.