## IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON

CARL HANKS,                  )
                                  )

           Petitioner/Appellant,    ) Claims Commission No. 401858
                                  )

VS.                             ) Appeal No. 02A01-9810-BC-00295
                                  )

STATE OF TENNESSEE,     )
                                  )

           Defendant/Appellee.     )

**FILED**

July 2, 1999

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

APPEAL FROM THE CLAIMS COMMISSION
OF TENNESSEE
THE HONORABLE MARTHA BRASFIELD, COMMISSIONER

**CARL HANKS, pro se**
Henning, Tennessee

**PAUL G. SUMMERS**
**Attorney General & Reporter**
**MICHAEL MOORE**
**Solicitor General**
**PAMELA S. LORCH**
**Assistant Attorney General**
Nashville, Tennessee
Attorneys for Appellee

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**CONCUR:**

**W. FRANK CRAWFORD, P.J., W.S.**

**DAVID R. FARMER, J.**

This appeal is brought from the Claims Commission's order dismissing the

appellant's petition. Petitioner, a Tennessee Department of Correction inmate, was attacked by another inmate and sustained injuries as a result. Petitioner alleged in his complaint that the State of Tennessee was negligent in not providing adequate security. For the following reasons we affirm the Claims Commission's order granting the State's motion for summary judgment.

Carl Hanks, appellant, is an inmate housed at the Lake County Regional Correctional Facility ("Lake County"). The Lake County prison houses only minimum custody level inmates. The prison is comprised of separate physical units known as "guilds" in which the inmates are housed. At the time of the attack, Hanks was housed in Guild 3. Guilds 2 and 3 are attached by a connecting corridor, and they are guarded by one security officer, who rotates between the two guilds.

Billy Aldridge was another inmate who lived in Guild 3 at the time of the attack. Hanks and Aldridge were acquainted as both had been housed as pretrail detainees in Shelby County in 1992. Aldridge worked in the kitchen in Guild 3. After arriving at the Lake County prison, Hanks and Aldridge had had some disagreements over the food service, the last of which had occurred on the evening of July 11, 1994. These disagreements were verbal in nature and had never come to blows. Moreover, Hanks stated in his deposition that on the evening of July 11, 1994, he and Aldridge talked and agreed to settle their differences. It is undisputed that Hanks never complained to prison officials about Aldridge nor did he seek protective custody.

Following breakfast on the morning of July 12, 1994, Aldridge instructed Hanks to come into the kitchen in Guild 3 to empty his food tray. Upon entry, Aldridge threw a pan of hot grease on Hanks. Hanks sustained severe burns as a result of the attack. At the time of the attack, the security officer was in Guild 2.

On January 4, 1995, Hanks filed a complaint with the Tennessee Claims Commission, naming the State as the defendant. Hanks alleged that the State was liable

2

for the attack because the State failed to provide adequate security to protect him from attacks by other inmates. Specifically, Hanks alleged that the State was negligent in only providing one security officer for two guilds. On June 12, 1998, the State filed a motion for summary judgment, and on September 16, 1998, the Claims Commission entered an order granting summary judgment in favor of the State. Thereupon, Hanks filed a notice of appeal on October 15, 1998, and the appeal is properly before this Court for consideration.

The Court first turns its attention to an issue raised by the appellee, that is, whether the notice of appeal was timely filed. The appellee claims that the Claims Commission's final order was entered on September 14, 1998, but the notice of appeal was not filed until October 15, 1998, more than 30 days later. Therefore, the State contends that the notice of appeal was not timely filed within 30 days as required by Rule 4 T.R.A.P.

Rule 58 T.R.C.P. sets forth the requirements for entry of a judgment, and it states in relevant part:

> Entry of a judgment or an order of final disposition is effective when a judgment containing one of the following is marked on the face by the clerk as filed for entry:
> .....
> (3) the signature of the judge and a certificate of the clerk that a copy has been served on all other parties or counsel.

While the order was signed by the Commissioner on September 14, 1998, the order was not "entered" under Rule 58 T.R.C.P. until September 16, 1998, when it was marked as "Filed" by the Claims Commission clerk. Therefore, the appellant's notice of appeal filed on October 15, 1998, was filed within 30 days of entry of the judgment, and the appeal is timely. Rule 4 T.R.A.P.

The Court now turns its attention to the consideration of the appeal-in-chief. On appeal, the appellant contends that the prison violated its own policies and post orders. After careful examination of the pleadings filed below, we find that nowhere did the appellant ever allege that the State, through its officers at the prison, violated its own operating policies and post orders. Instead, the appellant alleged only that the State was

3

negligent in not providing adequate security to protect the inmates from attack. Under Rule 13(c) T.R.A.P., this Court may only consider those facts established by the evidence in the trial court and set forth in the record.

No presumption of correctness attaches to decisions granting summary judgment because they involve only questions of law. Thus, on appeal, we must make a fresh determination concerning whether the requirements of Rule 56 T.R.C.P. have been met. *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn. 1991).

We begin our analysis of the issue of summary judgment by noting that a motion for summary judgment should only be granted if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Rule 56.03 T.R.C.P.; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating that no genuine issues of material fact exist. *Byrd*, 847 S.W.2d at 210. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. (Citations omitted). In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211. (Emphasis in original).

T.C.A. § 9-8-307(c) provides that "[T]he determination of the state's liability in tort shall be based on the traditional tort concepts of duty and the reasonably prudent person's standard of care." Therefore, the burden of proof is upon Hanks to establish that his injuries were caused by the negligence of the State. To do that, the appellant must prove the following elements: (1) a duty of care owed by the State to the claimant; (2) conduct falling below the applicable standard of care owed by the State to the claimant; (3) injury or loss; (4) causation in fact and (5) proximate cause. *Shouse v. Otis*, 448 S.W.2d 673, 676 (Tenn. 1969); *Hastings v. Smith*, 443 S.W.2d 436, 438 (Tenn. 1969).

4

In this case, there has been no showing that the State breached its duty to exercise ordinary and reasonable care. As established in ***Cockrum v. State***, 843 S.W.2d 433, 436 (Tenn. App. 1992), prison officials are not insurers of a prisoner's safety. In a case such as this, the conduct of the prison officials must be commensurate with the prisoner's known condition. ***Id.*** In ***Gillespie v. Metropolitan Govt.***, No. 01A01-9109-CV-00317 (Tenn. Ct. App. Jan. 24, 1992), the Middle Section of this Court also held that penal institutions are not insurers of an inmate's safety in regard to inmate-on-inmate assaults.

The general rule is that penal institutions have a duty to use reasonable and ordinary care to prevent foreseeable attacks on inmates by other inmates. The penal institution breaches this duty when its authorities know of or have reason to anticipate an attack and do not use reasonable care to prevent it. ***Padgett v. State***, 558 N.Y.S.2d 433, 434 (N.Y. App. Div.), *appeal denied*, 563 N.Y.S.2d 767 (1990); ***Spann v. State***, 421 So.2d 1090, 1092, 1093 (Fla. Dist. Ct. App. 1982), *petition for review denied*, 430 So.2d 452 (Fla. 1983); ***Saunders v. State***, 446 A.2d 748, 751 (R.I. 1982); ***Parker v. State***, 282 So.2d 483, 486 (La.), *cert. denied*, 414 U.S. 1093, 94 S.Ct. 724 (1973); ***City of Lexington v. Greenhow***, 451 S.W.2d 424, 425-26 (Ky.Ct.App. 1970); Generally speaking, there must be some prior notice of an attack. ***Gillespie****, supra*; ***Harris v. State***, 297 A.2d 561, 563 (N.J. 1972).

In light of the foregoing, we find no breach of the required duty of care on the part of the State. Hanks admitted in his deposition that he had not notified prison officials concerning the potential for attack from Aldridge:

> Q. Now, when these incidents or arguments or problems would arise between you and Mr. Aldridge going all the way back to the very beginning the first time you had a problem with him, have you gone to any guild officer or department of correction officials to report it, or have you merely tried to I'm just going to get it worked out between me and the other guy?
>
> A. I never went to a correctional officer.
>
> Q. Okay. So you've never gone to anyone and asked for protective custody --
>
> A. No, sir.
>
> Q. -- from Mr. Aldridge.

5

A. No, sir.

Q. You haven't gone to any correctional officer and told on Mr. Aldridge --

A. No, sir.

Q. -- or complained about him.

A. No, sir.

Q. Okay. So on the evening of July 11th when the incident occurs going through the chow line at supper involving the omelet, you just went and sat down and ate.

A. Yes, sir.

Q. And you didn't say anything to Mr. Aldridge about it at the time.

A. No, sir.

Q. And you didn't go to report what had happened to any correctional officer.

A. No, sir.


Hanks also testified that the guard had no notice that Aldridge posed any danger.


Q. Well, who was the correctional officer working there that morning?

A. That morning it was Avery.

Q. Okay. Did Avery have any idea or notice or any inclination to think you were in any danger from Inmate Aldridge that morning?

A. Not that I know of.

Moreover, there is no proof in the record establishing that Inmate Aldridge had any disciplinary infractions or other history of assaults during the two years he had been in prison prior to his attack on Hanks.



Based on the foregoing, the State had no notice that Aldridge posed any threat of harm to Hanks. Therefore, we conclude that the State did not breach its required duty of care. We affirm the Claims Commission's order granting summary judgment in this cause. Costs on appeal are adjudged against the appellant.

_____

_____HIGHERS, J.


CONCUR:


_____
CRAWFORD, P.J., W.S.


_____
FARMER, J.

7