### BROWNING et al. v. GRAVES et al.
#### No. 14230.

Court of Civil Appeals of Texas. Fort Worth.

May 2, 1941.

Rehearing Denied June 13, 1941.

516

John Davenport and W. W. Ballard, both of Wichita Falls, and Rogers & Spurlock and Ardell .M. Young, all of Fort Worth, for appellants.

Smoot & Smoot, of Wichita Falls, for appellees.

SPEER, Justice.

This suit was filed in one of the District Courts of Wichita County by Mrs. Ethel Graves, for herself and in behalf of her daughter, Peggy Jean Graves, the surviving wife and minor daughter of Percy Graves, deceased, and J. W. Graves, the father of deceased, against Perry Browning, sheriff of Wichita County, Texas, Public Indemnity Company, a corporation, as surety on the sheriff's official bond, Sid Johnson and H. G. Gill, deputies of Sheriff Browning.

On November 24, 1934, Percy Graves was arrested by deputy Gill for drunkenness at about four o'clock in the morning, and taken to the county jail and delivered to Sid Johnson, the jailer. Johnson placed Graves in what is called "tank" or compartment No. 1, which contained other prisoners, some of whom were alleged to be notorious criminals known to be of a vicious and murderous disposition; that shortly after Graves was so incarcerated he was assaulted by one of the inmates with a "blackjack", alleged to be a deadly weapon, from which assault Graves died. It appears that the jail of Wichita County is a three-story structure and that there are four compartments, each of which has three or four cells, which may be locked and unlocked by the use of a lever on the outside of the compartment; each cell, when unlocked, permits the inmate of that cell to have access to the corridor or "runaround" adjacent thereto. Allegations were made to the effect that the sheriff and his deputies knew or by the exercise of ordinary care should have known of the vicious character of the prisoners contained in tank No. 1, and especially of one prisoner named Ebers; that it was negligence upon the part of the sheriff not to lock such prisoners in separate cells, so that they could not do harm to other prisoners, especially those held temporarily for misdemeanors, as was Graves, the deceased. Further allegations were made that the sheriff and his deputies knew, and by the exercise of ordinary care should have known, that the prisoners in the compartment in which Graves was placed had in their possession deadly weapons, such as "blackjacks", with which they could inflict serious bodily injuries upon each other, and especially the deceased, and that it was negligence for the officers not to discover and remove said deadly weapons from said prisoners. Many other acts of the officers were alleged to constitute negligence, but they were not presented to the jury and need not be mentioned here.

The case was tried to a jury on special issues. The verdict, as reflected by the issues and their answers, was substantially as follows: (1) The prisoners in the tank where Graves was placed were in possession of "blackjacks" at the time he was placed therein; (2) Johnson (the deputy) was negligent in placing Graves in the tank with prisoners possessing blackjacks; (2a) such negligence was a proximate cause of Graves' death; (5) Browning (the sheriff) was negligent in not discovering and removing the blackjacks from the prisoners in the cell in which Graves was placed; (5a) such negligence was a proximate cause of Graves' death; (7) Graves was killed by Ebers (a prisoner) in the jail on November 24, 1934; (8) Johnson (the deputy) was guilty of negligence in placing Graves in the jail tank occupied by Ebers, and (9) such negligence was a proximate cause of the death of Graves. Special issues 10 and 11 found the amount of damages awarded to the wife and daughter, respectively, of the deceased.

Judgment was entered in favor of Mrs. Graves and the daughter for the amount found, against Perry Browning (sheriff), Sid Johnson (deputy) and Public Indemnity Company (surety on the sheriff's bond). No recovery was allowed to J. W. Graves, the father of deceased, nor was recovery allowed to any party against H. G. Gill, the deputy who made the arrest. After motion for new trial was overruled, Perry Browning and Sid Johnson perfected their appeal to this court. Those two will be referred to as appellants, while Mrs. Graves and her daughter will be referred to as appellees.

No error is presented by first and second propositions by appellants. They claim it was not proper for the court to permit certain witnesses, who were inmates of

the jail shortly prior to and at the date on which Graves was killed, to testify substantially that during the time they were in jail they were in tank No. 1, and that the prisoners organized a "kangaroo court" for the enforcement of their rules, which they called "sanitary regulations", and that they often tried those persons that were put into the compartment upon a charge of breaking into jail; that the prisoner Ebers was "sheriff" of the court and as such beat up other prisoners; that there were several blackjacks in the compartment, the judge of "court" had one and Ebers had one, which he often carried in his pocket; that others were hidden under bunks and in various places; the witnesses saw the assault by Ebers on Graves, and detailed how he was beaten, undressed by two prisoners, and thrown under the shower in a dying condition. The objections urged to the testimony was upon the grounds that it was hearsay and immaterial. Appellees' pleadings substantially covered the matters mentioned. The testimony was not hearsay, nor was it immaterial to the issues made.

██ Propositions 3, 4, 5 and 18 assert that an instructed verdict for appellants should have been given. By some of these propositions certain alleged acts of negligence are pointed out, and because there was no testimony offered to support them, it is claimed that the summary charge should have been given. Others go to the issues that were submitted and answered by the jury. It is asserted that before appellees could recover in this case it was necessary for them to prove that appellants knew, or by the exercise of ordinary care should have known, that Graves would be injured if he was placed in said cell. There is evidence in the record tending to show that appellants knew the prisoners fought each other in this compartment, that when this occurred they separated them, placing those apparently to blame in separate cells; the jailer's room was at the bottom of the stairs leading from the prison cells; one could hear from the jailer's room what was going on in the cells when the prisoners became boisterous; that when Graves was knocked in the head the prisoners did call to the jailer and asked him to come up; both appellants testified that they knew the prisoners had some kind of an organization among themselves for the purpose of enforcing the jailer's rules of sanitation. Testimony of other witnesses was that in addition to the jailer's rules they inaugurated many rules of their own; it was

shown that the officers often searched the cells and never did fail to find weapons made of hard substances sufficient to inflict serious injuries on a man; that when this killing took place, the jail had not been searched for a week or ten days; it was shown by the testimony that three different deputies had been present at times when the "kangaroo court" was in session; the jailer said he knew that insofar as he was concerned it was dangerous for him to go inside of the cell; he said, in effect, that he would as soon go into a lion's den. One could readily see, perhaps, the danger to which the officer referred. The jailer knew that Ebers was charged with highway robbery in another county and had been brought to Wichita County in chains for safe-keeping. We think these are pertinent circumstances tending to show negligence of the sheriff and his deputies in placing the deceased, charged with a misdemeanor, in the compartment with those prisoners mentioned, especially when deceased was considered a "holdover", who had advised the jailer that he must go to work at eight o'clock, and there was another compartment conveniently situated containing three juveniles then confined in the cells adjacent to the run-around in which no other person was confined. It was said by the jailer that he would have had to go up another flight of stairs to get another place to confine Graves. We also think the testimony sufficient to raise the issue of negligence in the failure of the appellants to discover and remove the weapons then undeniably possessed by the prisoners in the compartment in which deceased was placed. The jury found these acts to be negligence and the proximate cause of Graves' death. The court's definition of proximate cause properly presented the point in this language: "Proximate cause is that cause which in a natural and continuous sequence, unbroken by any new or independent cause, produces an event or injury and without which such injury would not have occurred, and which injury, or a similar one, ought to have been foreseen by a person of ordinary care and prudence, in the light of attending circumstances."

In this connection, appellants argue that it was the imperative duty of appellants under Penal Code Art. 324, to receive and imprison Mr. Graves at the time in question, but it is conceded that it is the duty of the officer to use all reasonable efforts to protect his prisoner from harm while in his custody, but that there is no testimony

tending to show that the jailer had any reason to expect that Graves would be injured by the prisoners in the compartment in which he was placed. They likewise concede that under the provisions of Article 5116, R.C.S., the sheriff is the keeper of the jail and that he is responsible for the official acts of his deputy assigned to that duty but it is contended that since under Article 5115, R.C.S., the county and not the sheriff provides the jail facilities, the latter should not be held responsible for injuries to the prisoners placed in the jail, growing out of conditions over which he had no control.

We have seen no case by the courts of this state in which the precise question here involved has been raised. We are cited to the case of Stinnett v. City of Sherman et al., Tex.Civ.App., 43 S.W. 847. There the chief of police and his bondsmen were sued for injuries inflicted on a prisoner by another prisoner who was demented and had been placed in the city jail a few hours earlier by another policeman. The officer who placed the crazy man in jail was found to be negligent in failing to search and take the knife from him, but that officer was not a party to the suit. Plaintiff was likewise arrested and incarcerated by a policeman. The chief of police did not know that either of the prisoners was in jail. The two policemen making the arrests were elected by the city council and were not deputies of the chief of police, and it was held that the chief was not responsible for the negligence of either of the policemen. A different situation is presented by the instant case. Appellants have cited us to annotations from other jurisdictions shown in Vol. 46 A.L.R. pages 114 and 115. The editor of those annotations says: "The general rule gathered from the cases which have considered the question as to liability of an officer in charge of the jail or prison for an injury inflicted by one prisoner upon another prisoner is that, in order to hold the officer liable for such injuries, there must be knowledge on the part of such officer that such injury will be inflicted or good reason to anticipate danger thereof, and negligence in failing to prevent the injury." The cases cited sustain the statement made. That seems to be the settled rule in those states. Any one interested in pursuing the thought further may profitably read the cases there cited. Applying the rule above announced, appellants contend that there is no testimony in this case upon which the

jury could find, as it did, that the sheriff and jailer were negligent in not discovering and removing the weapons from the jail "tank" in which deceased was placed, and that such negligence was a proximate cause of Graves' death.

■ It is not denied that Johnson was the legally appointed deputy of Browning assigned to the duty of receiving prisoners, placing them in jail and caring for them during the time they were so confined. It goes without saying that the jailer was charged with that care and protection, as far as he could reasonably confer by the exercise of ordinary care. We take this to mean that he should exercise ordinary care to prevent those confined together from having in their possession weapons with which they might inflict serious injuries upon another prisoner. An interesting discussion of these duties may be found in case of Bracken v. Cato, 5 Cir., 54 F.2d 457; we think the correct rule is there announced.

■ It is undeniably true that the prisoners in cell or tank No. 1 did possess weapons referred to by the witnesses as blackjacks which could be used for the infliction of serious injuries. The officer knew such weapons had been found among those prisoners every time he had made previous searches in the compartment; it is not unreasonable to assume that the prisoners would again make and possess them; he had not searched the compartment for a week or ten days prior to Graves' death. If a jailer whose duty it was to care for and protect his prisoners from harm, would have, in the exercise of ordinary care, discovered the presence of these weapons and removed them, and thus prevent the tragedy that resulted in Graves' death, he, with his principal, the sheriff, would be responsible in damages for having failed. King v. Brown, 100 Tex. 109, 94 S.W. 328, 330. The propositions and their related assignments are overruled.

■ Much of what has been said in connection with the last group of propositions is applicable to appellants' 6th, 7th and 8th propositions, which complain of the submission of Special Issue No. 1, which reads: "Do you find from a preponderance of the evidence that the prisoners in the jail or tank in which Percy Graves was placed, were in possession of blackjacks at the time he was placed in there?" The answer was: "Yes." It is urged (a) that the inquiry was "too broad, and that there was no evi-

dence to support it"; and (b) that appellees having relied upon evidence that the prisoner Ebers possessed such a weapon, the inquiry should not have been made about others. The pleadings on the point involved are lengthy, but they clearly complain of the vicious character of the prisoners confined in the compartment where Graves was placed, and that he was attacked by a prisoner named Ebers and beaten with a blackjack, which the officers had negligently permitted him to possess. The record discloses that several such weapons as that used by Ebers in making the assault on deceased were in the cell at the time. This testimony is uncontradicted. Nor is there any contradicting testimony to the established fact that Ebers assaulted and killed the deceased with the weapon described. As we see it, no controverted issue was raised by the testimony on the point, and its submission in the manner presented could not form the basis for reversible error. Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780, writ dismissed. See also the many authorities cited in Southern Underwriters v. Boswell, Tex. Civ.App., 141 S.W.2d 442, 446.

■ By propositions 9 and 10 complaint is made of Special Issue No. 2. It reads: "Do you find from a preponderance of the evidence that Sid Johnson (the jailer) was guilty of negligence in placing Percy Graves in the tank with other prisoners who were armed with 'blackjacks', if they were so armed?" The answer was: "Yes." In answer to Special Issue 2a it was found that such negligence was a proximate cause of Graves' death. The objections urged to No. 2 were that since the prisoner Ebers was the only one involved in Graves' death it was error to submit the issue in that form and for the further reason that there was no evidence to support the issue as submitted. We cannot agree with the contention that Ebers was the only one involved in the death of deceased. There is undisputed evidence in the record that immediately after Ebers attacked Graves, another prisoner aided him in stripping Graves naked and in carrying him to the shower and throwing him under it, where his head struck a heavy blow against the cement floor. To avoid repetition as to the pleadings, we refer to what we have said above under the last preceding group of propositions.

■ By propositions 11 and 12 the correctness of Special Issues 5 and 5a is challenged. Special Issue No. 5 reads: "Do you find from a preponderance of the evidence that the defendant Browning (sheriff) was guilty of negligence in not discovering and removing the 'blackjacks', if any, from the jail tank in which Percy Graves was placed?" The answer was, "Yes". By Special Issue No. 5a it was found that that negligence was a proximate cause. The objections urged to these issues were, (a) that there was no testimony showing that Browning could have known that the prisoners possessed blackjacks, and (b) Special Issue No. 5 was multifarious. What we have already said disposes of the first point against the contention of appellants. Under point "b" it is contended that the issue is multifarious because it inquired if Browning was negligent in not *discovering and removing* blackjacks possessed by the prisoners. In the first place, the objection urged by appellants before the submission of the issue was not sufficient to advise the court of the point raised. In this respect the objection reads: "Because same is multifarious and upon the weight of the evidence." It is now well settled that under the provisions of Article 2185, R.C.S. an objection to the charge must be such as will enable the court to know in what respect the charge is improper and to enable him to meet the error. Southwestern Bell Telephone Co. v. Ferris, Tex.Civ.App., 89 S.W.2d 229, writ dismissed. To be available on appeal the objection must point out the part of the charge objected to and state in what respect it is erroneous. Norwich Union Indemnity Co. v. Wilson, Tex.Civ.App., 17 S.W.2d 68, writ dismissed. In Associated Indemnity Corporation v. Baker et al., Tex. Civ.App., 76 S.W.2d 153, 158, writ dismissed, almost an identical objection as is here presented was held to be insufficient to raise the point. The same objection was held insufficient in Panhandle & S. F. Ry. Co. v. Friend, Tex.Civ.App., 91 S.W.2d 922, 931. In the second place, even if the objection was sufficient to support an assignment of error, we think it required a finding that the officer negligently failed to discover, as well as his negligent failure to remove the weapons from the prisoners, to constitute a proximate cause of the attack on the deceased. It took both fact issues found by the jury to make a causal connection between the officer's conduct and the death of Graves. It was not improper to submit the two factual questions conjunctively, as was done, to determine

the ultimate fact issue of negligence. Speer's Special Issues, sect. 94, page 128. In City of Abilene v. Moore, Tex.Civ.App., 12 S.W.2d 604, 605, writ refused, a similar situation was involved to the one before us. There, the City was charged with negligence in permitting a ditch to remain open without sufficient lights to warn the plaintiff of danger. The special issue inquired: "Was the ditch open and exposed without sufficient lights to warn the plaintiff of the location of the ditch?" The question was held not to be subject to the objection that it was multifarious. There is yet a third reason why we think the point cannot be sustained; in connection with the written objection to the court's Special Issue No. 5, appellants stated the issue should be submitted in this language: "Do you find from a preponderance of the evidence that the defendant, Perry Browning, was guilty of negligence, as that term has been defined to you, in *not discovering* that Ed Ebers possessed the blackjack *and removing* the same from the tank in question?" (Italics are ours).

 Clearly the requested charge is open to the same objection of multifariousness as was the charge given. Appellants could not request a charge such as the one here and complain because the one given contained the same vice as the one requested. See Southern Underwriters v. Blair, Tex.Civ.App., 144 S.W.2d 641, and cases cited at page 645.

 We overrule proposition 13, which complains of the charge inquiring if Sid Johnson was negligent in placing Graves in the jail tank occupied by Ebers. There was ample pleading and testimony to raise the question. We have referred to this above and see no reason to repeat it.

 By the 14th proposition complaint is made because the court refused to submit a requested issue inquiring if Graves was placed in the only available compartment in the jail. The jailer Johnson testified in detail about the locations of the various compartments; he said there was one on the right hand side which had four separate cells and a run-around into which

four cells opened, and that this compartment was generally used for "hold-overs"; that there were three juveniles in the cells on the night of Graves' arrest; that each of the cells could be locked and separated from the corridor or run-around. He said he usually put drunks and those charged with misdemeanors in the hold-over. When the hold-over was not available they sometimes put them in tank No. 1, because it was the handiest; that you would have to take them up another stair to put them anywhere else. There was testimony by other witnesses to the effect that it was the custom to put those charged with misdemeanors in the hold-over and that the four cells adjoining the hold-over corridor could be locked off from it. We think the evidence shows without dispute that on the occasion in question, deceased could have been put in the hold-over corridor without disturbing the juveniles in the cells, or by climbing a flight of steps, as indicated by the jailer, other space was available for the detention of Graves, without the necessity of placing him in tank No. 1, where he met his death. There was no issue of fact raised that no other place was available for detaining the deceased, and therefore no error is shown by the refusal to give the requested issue.

 Propositions 15, 16 and 17 charge jury misconduct. The testimony adduced upon the motion for new trial covers about 75 pages of questions and answers. To analyze it all would serve no useful purpose. We have studied it all carefully and find that the testimony of the jurors who testified is conflicting as to the matters relied upon by appellants. The trial court heard their testimony and overruled the motion. In such circumstances, the effect of the court's ruling was to find as a matter of fact the misconduct did not take place. We are bound by the findings of facts by the court, when there is such a conflict as we find here. Norris Bros. v. Mattinson, Tex.Civ.App., 145 S.W.2d 204, 211, and authorities there collated.

For the reasons herein set out, we overrule all assignments of error and affirm the judgment of the trial court.