IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00377-CV

 

C. Joseph Salazar, II,

                                                                                    Appellant

 v.

 

JAMES A. COLLINS

AND JACK M. GARNER,

                                                                                    Appellees

 

 

 



From the 52nd District Court

Coryell County, Texas

Trial Court No. COT-94-29032

 



Opinion



 








            Prison inmate C. Joseph Salazar, II
appeals from a summary granted in favor of prison administrators James A.
Collins and Jack M. Garner.  Salazar contends in three issues that: (1) the
court erred by granting Collins’s and Garner’s summary-judgment motion and
denying Salazar’s motion for partial summary judgment because the evidence
conclusively establishes that they had a legal duty to protect him from another
inmate who assaulted him (two issues); and (2) the court abused its discretion
by permitting the withdrawal of deemed admissions.  We will reverse and remand.

Background

            Salazar’s suit is based on an
allegation that he was attacked with a weapon by fellow inmate Mark Basden in
December 1992,[1]
“which resulted in a prominent scar and permanent disfigurement.”  At the time
of the alleged assault, Collins was the Executive Director of the Texas
Department of Criminal Justice, and Garner was the warden of the Hughes Unit
where Salazar was imprisoned.  Salazar alleged in his Sixth Amended Complaint[2]
that Collins and Garner (collectively, “Appellees”) were liable for various
theories of negligence and gross negligence because TDCJ “agents, employees,
and servants” housed Salazar in the administrative segregation unit with Basden
even though they knew that both were associated with competing “disruptive
groups” and because of the manner in which TDCJ “agents, employees, and
servants” implemented or failed to implement administrative policies
promulgated by TDCJ for security in administrative segregation units.

            Salazar filed a motion for partial
summary judgment in which he alleged that Appellees owed him a duty as a matter
of law to control Basden’s conduct and that section 501.019 of the Government
Code does not apply.[3] 
Salazar argued in particular that they owed him a duty to control Basden’s
conduct because a “special relationship” existed between Appellees and Basden and
because they “had specific control over the security of the premises.”

            Appellees filed a traditional
summary-judgment motion[4] in
which they argued that: (1) they owed no legal duty to Salazar because his
injuries were not foreseeable, the imposition of such a duty in the prison
context would be contrary to public policy, and there was no “special
relationship” between Basden and them merely because of their status as prison
administrators; and (2) they have official immunity because inmate housing
assignments are discretionary matters, they were acting in their official
capacity, and Salazar did not allege that they acted in bad faith.

            In Salazar’s First Amended Motion for
Partial Summary Judgment and Responses to Defendants Motion for Summary
Judgment, he abandoned his claim regarding section 501.019 of the Government
Code but reiterated his duty contention on the same grounds.  In response to Appellees’
summary-judgment claims, he argued that:

(1) they owed him a duty of reasonable care
because of their “special relationship” with him;

 

(2) they are not entitled to official immunity
because:

 

(A) prison guards admittedly failed to follow TDCJ
policy AD-03.50 (governing prisoners in administrative segregation) which
requires among other things that guards thoroughly search dayrooms and
recreational areas “prior to and after each use” and thoroughly strip-search
inmates “before and after recreation or leaving the assigned cellblock,” and

 

(B) policy AD-03.50 imposes ministerial rather
than discretionary duties; and

 

(3) they are not entitled to official immunity
because the allegations of his petition that they acted with “gross
negligence,” “reckless disregard,” and “conscious indifference” should be
construed as allegations of bad faith.

 

            In support of his amended
motion/response, Salazar offered his own affidavit, Appellees’ responses to his
first and fourth requests for admissions, his second request for admissions and
production of documents, which Appellees had failed to answer, and his third
request for admissions, which Appellees had also failed to answer.

            Appellees filed a response in which
they argued primarily that they had no legal duty because they had no
“day-to-day control and supervision” over Basden.  However, they did not
provide additional summary-judgment evidence to support this contention.

            During a telephonic hearing on the
summary-judgment motions, the court asked Salazar to provide copies of the
signed return receipts accompanying his unanswered discovery requests, which Salazar
did by filing a “Supplemental Record” about one week after the hearing.  These
receipts demonstrate that the Attorney General’s office received Salazar’s
discovery requests as he alleged.

            Appellees then filed a motion to
strike their deemed admissions.  They admitted that the discovery requests were
received by the Attorney General’s office but argued that their failure to
answer was accidental and not the result of conscious indifference because the
documents were never received by the attorney-in-charge of their case.  They
also argued that Salazar would not be prejudiced if their deemed admissions
were withdrawn.

            In a subsequent hearing, the court
granted Appellees’ motion to strike the deemed admissions, denied Salazar’s
amended motion for partial summary judgment, took Appellees’ summary-judgment
motion under advisement, and set the case for jury trial.

            Salazar then filed his Eighth Amended
Complaint, alleging only two claims against Appellees, namely, that they are
liable for ordinary negligence and gross negligence because their “agents, employees
and/or servants failed to take reasonable steps to control the conduct of
Basden” (the inmate who assaulted Salazar).  In connection with these claims, Salazar
alleges that prison employees at the Hughes Unit failed to follow TDCJ policy
AD-03.50, complaining in particular that prison guards failed to thoroughly
search dayrooms and recreational areas “prior to and after each use” or
thoroughly strip-search inmates “before and after recreation or leaving the
assigned cellblock.”[5]

            The trial court granted Appellees’
summary-judgment motion, holding in particular that neither Appellee “owed a
legal duty to Plaintiff Salazar” and that both Appellees “are entitled to
official immunity.”

 

Deemed Admissions

            Salazar contends in his third issue
that the court abused its discretion by permitting Appellees to withdraw their
deemed admissions.

            A trial court has broad discretion to
grant or deny a request to withdraw deemed admissions.  Wheeler v. Green,
157 S.W.3d 439, 443 (Tex. 2005) (per curiam).  No abuse of discretion occurs in
this regard if there is a showing of (1) good cause and (2) no undue
prejudice.  Id. at 442 (citing Tex.
R. Civ. P. 166a(c), 198.3).  Good cause is established by a showing that
the failure to respond to the request for admissions “was an accident or
mistake, not intentional or the result of conscious indifference.”  Id.  “Even a slight excuse will suffice, especially when delay or prejudice to the opposing
party will not result.”  Boulet v. State, 189 S.W.3d 833, 836 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (quoting Spiecker v. Petroff, 971
S.W.2d 536, 538 (Tex. App.—Dallas 1997, no pet.)).  Undue prejudice occurs when
permitting the withdrawal and allowing a late response will delay the trial or
significantly hamper the opposing party’s ability to prepare for trial.  Wheeler,
157 S.W.3d at 443.

            Salazar served his second and third
requests for admissions in August and September of 2003 respectively. 
Appellees apparently did not become aware of their failure to respond until
June 2004 when Salazar filed his amended motion for partial summary judgment
and response to Appellees’ summary-judgment motion.  In Appellees’ motion to
strike the deemed admissions, they stated that their failure to answer the
requests for admissions happened because these documents were inadvertently
misplaced after they were received by the Office of the Attorney General and
were never routed to the particular attorney assigned to the Salazar case.

            Appellees’ motion indicates that there
was no conscious indifference on their part and that the failure to timely
respond was due to a clerical error within the Office of the Attorney General. 
Thus, the court did not abuse its discretion by finding good cause for the
withdrawal of the deemed admissions.  See Spiecker, 971 S.W.2d at
541-42.

            Regarding undue prejudice, there is
nothing in the record to indicate that trial was delayed or Salazar’s ability
to prepare for trial was hindered by the trial court’s decision.  See
Wheeler, 157 S.W.3d at 443.  In fact, as will be seen hereinbelow, some of
Appellees’ late-filed responses actually support Salazar’s contentions.  We
hold that the court did not abuse its discretion by permitting the withdrawal
of the deemed admissions.  Accordingly, we overrule Salazar’s third issue.

Contentions Which Will Not Be Addressed

            Appellees address issues of vicarious
liability and res judicata in their brief.  For the reasons which follow,
however, we find that these issues were not properly raised in the
summary-judgment pleadings.  Therefore, we shall not further address them on
appeal.

            A trial court cannot grant summary
judgment on a ground not expressly presented in the summary judgment motion or
a response thereto.  See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 625 (Tex. 1996); Watson v. Dallas Indep. Sch. Dist., 135 S.W.3d 208,
219 (Tex. App.—Waco 2004, no pet.).  We may consider only those grounds “the
movant actually presented to the trial court” in the motion.  Id.  Grounds
raised in a brief filed in support of the motion or response, but not in the
motion or response itself, may not be considered by the trial court or by this
Court.  McConnell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 340-41,
343 (Tex. 1993); Fletcher v. Edwards, 26 S.W.3d 66, 74 (Tex. App.—Waco 2000, pet. denied).

            Appellees stated in their
summary-judgment motion that the motion presented two “Questions of Law”:

A.        Whether Defendants have a duty as
described by Plaintiff (which forms the basis of his suit).

 

B.         Whether Defendants are entitled to
official immunity.

 

            Collins made passing reference in the
summary-judgment motion to his status as Executive Director of TDCJ and argued
generally that he “has no duty for which he can be held liable” and that he
“never had any personal interaction with Plaintiff or with Basden."  However,
he did not assert his administrative position with TDCJ as an independent
ground for relief, he did not cite any legal authority to support the
proposition that a TDCJ administrator cannot be liable for the negligence of
prison employees, and he offered no summary-judgment evidence pertinent to
these issues.

            Garner similarly alleged that he was
the prison warden during the relevant time period, that he “never had any
personal involvement with Plaintiff or Basden,” and that the “law doesn’t
intend for [him] to be liable for every incident that occurs at the prison.” 
As with Collins, however, Garner did not rely on his administrative position as
an independent ground for relief, he did not cite any legal authority to
support the proposition that a prison warden cannot be liable for the
negligence of prison employees, and he offered no summary-judgment evidence
pertinent to these issues.

            Appellees likewise refer to their
administrative positions in their brief, but again they cite no legal authority
to support the proposition that a TDCJ administrator cannot be liable for the
negligence of prison employees.

            Appellees do clarify these contentions
somewhat in their appellate brief by claiming that “Salazar is basically suing
Garner and Collins under a theory of respondeat superior,” but again
they offer no argument or authority to support any contention that Salazar
cannot recover under a theory of vicarious liability.  Therefore, because
Appellees did not present the issue of vicarious liability as an independent
ground for relief in their summary-judgment motion, we may not consider it in
this appeal.  See Cincinnati Life Ins., 927 S.W.2d at 625; Fletcher,
26 S.W.3d at 74.

            Appellees also raised the affirmative
defense of res judicata in a trial brief and refer to it again in their
appellate brief.  They claim that res judicata bars Salazar’s suit because he
was within the class of inmates involved in the Ruiz litigation.  See
Ruiz v. Estelle, 503 F. Supp. 1265 (S.D. Tex. 1980), aff’d in part and
vacated in part, 679 F.2d 1115 (5th Cir. 1982).  However, because Appellees
did not address res judicata in their summary judgment motion, we may not
consider it in this appeal.  See Cincinnati Life Ins., 927 S.W.2d at 625;
Fletcher, 26 S.W.3d at 74.

Special Relationship

            Salazar contends in his first two
issues respectively that the court erred by granting Appellees’
summary-judgment motion and denying Salazar’s motion for partial summary
judgment because the evidence conclusively establishes that they had a legal
duty to protect him from Basden.

            Appellees contend in their
summary-judgment motion that, as a matter of law, prison officials owe no duty
to inmates to protect them from other inmates.  They argue in particular that:
(1) the mere fact that TDCJ houses violent inmates is not enough to establish
the foreseeability necessary to impose a duty in this circumstance; (2) public
policy dictates against the imposition of such a duty in the prison context;
and (3) no “special relationship” exists between prison officials and prisoners
warranting the imposition of such a duty.

            Salazar contends in his amended motion
for partial summary judgment/response to Appellees’ motion that the requisite
special relationship does exist.

            We review a trial court’s summary
judgment de novo.  Provident Life & Accident Ins. Co. v. Knott, 128
S.W.3d 211, 215 (Tex. 2003).  In reviewing a summary judgment, we must consider
whether reasonable and fair-minded jurors could differ in their conclusions in
light of all of the evidence presented.  See Goodyear Tire & Rubber Co.
v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) (citing Wal-Mart
Stores, Inc. v. Spates, 186 S.W.3d 566, 568 (Tex. 2006) (per curiam); City
of Keller v. Wilson, 168 S.W.3d 802, 822-24 (Tex. 2005)).  We must consider
all the evidence in the light most favorable to the nonmovant, indulging every
reasonable inference in favor of the nonmovant and resolving any doubts against
the motion.  See Goodyear Tire, 236 S.W.3d at 756 (citing Sudan
v. Sudan, 199 S.W.3d 291, 292 (Tex. 2006) (per curiam); Spates, 186
S.W.3d at 568).

 

            “[T]he existence of duty is a question
of law for the court to decide from the facts surrounding the occurrence in
question.”  Loram Maint. of Way, Inc. v. Ianni, 210 S.W.3d 593, 598 n.5
(Tex. 2006) (quoting Greater Houston Transp. Co. v. Phillips, 801 S.W.2d
523, 525 (Tex. 1990)).  Generally, there is no duty to control the conduct of third
parties.  Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 34 (Tex. 2002) (citing Greater Houston Transp., 801 S.W.2d at 525)); accord Loram
Maint., 210 S.W.3d at 596.  An exception to this general rule applies when
a special relationship exists between an actor and another that imposes a duty on
the actor to control the other’s conduct.  Tex. Home Mgmt., 89
S.W.3d at 34 (citing Greater Houston Transp., 801 S.W.2d at 525).

The question of legal duty is a multifaceted issue
requiring us to balance a number of factors such as the risk and foreseeability
of injury, the social utility of the actor’s conduct, the consequences of
imposing the burden on the actor, and any other relevant competing individual
and social interests implicated by the facts of the case.  Although the
formulation and emphasis varies with the facts of each case, three categories
of factors have emerged: (1) the relationship between the parties; (2) the
reasonable foreseeability of harm to the person injured; and (3) public policy
considerations.

 

Id. at
33-34 (citing Greater Houston Transp., 801 S.W.2d at 525; Otis Eng’g
Corp. v. Clark, 668 S.W.2d 307, 309 (Tex. 1983)) (other citations omitted).

            Thus, in Texas Home Management,
the Court concluded after balancing these factors that a private facility for
the mentally impaired which was required by State contract to exercise
supervisory control of its residents could have a duty to exercise control over
its residents.[6]  Id. at 39.  And in Texas Department of Mental Health and Mental Retardation v.
McClain, 947 S.W.2d 694 (Tex. App.—Austin 1997, writ denied), the Austin
Court held that the Austin State Hospital had a duty to exercise reasonable
care to protect one patient from another.  Id. at 697-98 (citing Restatement (Second) of Torts § 320
(1965)).

            Finally, in Browning v. Graves,
152 S.W.2d 515 (Tex. Civ. App.—Fort Worth 1941, writ ref’d), the Fort Worth
Court of Civil Appeals held that a sheriff (and his deputies) owes a duty “to
use all reasonable efforts to protect his prisoner from harm while in his
custody.”  Id. at 518.  The court likewise held that such an officer may
be found liable for injuries inflicted on one inmate by another if there is
“knowledge on the part of such officer that such injury will be inflicted or
good reason to anticipate danger thereof, and negligence in failing to prevent
the injury.”  Id. at 519 (quoting Annotation, Liability for Death of
or Injury to Prisoner, 46 A.L.R. 94, 114 (1927)); accord Miller v. Jones,
534 F.2d 1178, 1180 (5th Cir. 1976)).

            Browning appears directly on
point.  Nevertheless, because there is no more contemporary Texas authority on
this issue, we will examine the continuing viability of Browning in
light of more recent decisions, such as Texas Home Management, in which
the Supreme Court has established principles for determining whether a legal
duty is owed in a particular setting.

            We begin with Greater Houston
Transportation and Otis Engineering, two of the foundational authorities
on which the Court grounded its decision in Texas Home Management.  Both
of these decisions cited and followed the principles set forth in the
Restatement (Second) of Torts for determining when a person owes a legal duty
to control the conduct of another.  See Greater Houston Transp., 801
S.W.2d at 525 (citing Restatement
(Second) of Torts §§ 315-20 (1965)); Otis Eng’g, 668 S.W.2d at
309 (same).

            Section 315 of the Restatement
provides:

There is no duty so to control the conduct of a
third person as to prevent him from causing physical harm to another unless

 

(a) a special relation exists between the actor
and the third person which imposes a duty upon the actor to control the third
person's conduct, or

 

(b) a special relation exists between the actor
and the other which gives to the other a right to protection.

 

Restatement (Second) of
Torts § 315.

            Section 320 applies this principle in
the context of a prison or jail (or other institution where a person is
confined involuntarily).

Duty of Person Having Custody of Another to
Control Conduct of Third Persons

 

One who is required by law to take or who
voluntarily takes the custody of another under circumstances such as to deprive
the other of his normal power of self-protection or to subject him to
association with persons likely to harm him, is under a duty to exercise
reasonable care so to control the conduct of third persons as to prevent them
from intentionally harming the other or so conducting themselves as to create
an unreasonable risk of harm to him, if the actor

 

(a) knows or has reason to know that he has the
ability to control the conduct of the third persons, and

 

(b) knows or should know of the necessity and
opportunity for exercising such control.

 

Id. §
320.  Comment a then provides as follows:

            The rule stated in this Section is
applicable to a sheriff or peace officer, a jailer or warden of a penal
institution, officials in charge of a state asylum or hospital for the
criminally insane, or to teachers or other persons in charge of a public
school. It is also applicable to persons conducting a private hospital or
asylum, a private school, and to lessees of convict labor.

 

Id. cmt. a.

            We first examine the
relationship between the parties to ascertain the extent of control the
defendant exercises over the third party.  See Tex. Home Mgmt., 89
S.W.3d at 34-36.  In Texas Home Management, a mental health facility
contracted with the Department of Mental Health and Mental Retardation to
provide room and board, training, and treatment for juvenile offenders civilly
committed due to mental retardation.  Id. at 32, 35.  This contract
incorporated various state and federal regulations applicable to inpatient
mental health facilities.  Tex. Home Mgmt., 89 S.W.3d at 36. 
Regarding the facility’s right of control over the juvenile in question, the
Supreme Court held, “these standards, which THM voluntarily contracted to
follow, gave THM the right to control Dixon, and therefore a special
relationship existed.”  Id.  Here, it cannot be seriously questioned
that TDCJ exercises an even greater right of control over prison inmates than
the mental health facility in Texas Home Management.  Thus, we hold as a
matter of law that the requisite “special relationship” exists between inmates
and TDCJ (and its employees).

            Consistent with the
Restatement and with Browning, a significant majority of courts in other
states have likewise concluded that prison or jail officials owe a duty of
reasonable care to protect inmates from harm when that harm is reasonably
foreseeable.[7]  Cf.
Tex. Home Mgmt., 89 S.W.3d at 36 n.5 (citing supporting authorities from
other states).  Courts in several states have addressed this type of duty in
other contexts in which a person is held involuntarily, has otherwise
experienced an involuntary restraint of some degree, or has some other “special
relation” as contemplated by section 315 of the Restatement.[8] 
Leaving aside for the moment the issue of sovereign or official immunity, our
research has not disclosed a contrary decision.[9]  But
see Chivas v. Koehler, 182 Mich. App. 467, 453 N.W.2d 264, 268 (1990)
(“special relationship” between prison guard and inmate giving rise to duty
exists only if it is shown that guard has particular relationship with inmate
which is different than relationship guard has with general inmate population).

            We next examine the reasonable foreseeability of harm to the
person injured.  See Tex. Home Mgmt., 89 S.W.3d at 36-39; see also
Restatement (Second) of Torts § 320(b). 
The only summary-judgment evidence offered by Appellees is the affidavit of a
TDCJ “classification chief” from a different prison unit explaining the prison
system’s policies for inmate housing generally.  This affidavit makes no
reference to the specifics of Salazar’s claims.

            By contrast, Salazar
offered summary-judgment evidence in the form of Appellees’ responses to his
requests for admissions.  Appellees admitted that Basden had assaulted other
inmates with weapons.  They also admitted that they both “had a general
knowledge that inmate-on-inmate assaults did occasionally occur with weapons”
in administrative segregation at the Hughes unit.  However, Appellees denied
any prior knowledge of a rivalry between Salazar’s “disruptive group,” the
Hermanos de Pistoleros Latinos, and Basden’s, the Aryan Brotherhood of Texas. 
With regard to the housing assignments of rival prison gangs,[10]
Appellees stated, “classification policy and practice is to place buffer cells
between members of rival disruptive groups if they are to be housed in the same
area.  Inmates in administrative segregation are furthermore housed in single
cells.”

            With regard to Appellees’
summary-judgment motion, we view the evidence in the light most favorable to
Salazar.  See Goodyear Tire, 236 S.W.3d at 756.  Applying
this standard to the evidence pertinent to the issue of foreseeability,
Appellees failed to conclusively establish that Basden “did not present an
unreasonable and foreseeable risk of harm to [Salazar].”  See Tex. Home Mgmt., 89 S.W.3d at 36-39.

            With regard to Salazar’s
motion for partial summary judgment, we view the evidence in the light most
favorable to Appellees.  See Goodyear Tire, 236 S.W.3d at 756.  Applying
this standard to the evidence pertinent to the issue of foreseeability, Salazar
failed to conclusively establish that Basden did “present an unreasonable and
foreseeable risk of harm to [Salazar].”  See Tex. Home Mgmt., 89 S.W.3d at
36-39.

            Finally, we examine public
policy considerations.  Id. at 39.  Appellees vigorously contend in
their summary-judgment motion that public policy considerations weigh heavily against
the imposition of a legal duty in the prison-inmate context.

Basden was housed in the most restrictive area
that TDCJ has for its offenders.  There was nothing more either Defendant could
have done.  There is no harsher place to put either Basden or Plaintiff.  Both
the Plaintiff and his alleged attacker were in the most restrictive part of the
prison.  They had no other option in placing offenders.  Defendants placed Basden
in the most restrictive place they could; to hold them liable for “not doing
more” would be a miscarriage of justice and set a bad precedent for public
policy.

 

As with their sparse summary-judgment evidence,
however, Appellees focus almost exclusively on inmate housing assignments
without devoting any serious attention to Salazar’s alternate claims regarding
prison employees’ admitted failure to implement TDCJ security procedures for
the administrative segregation unit.

            As already stated, Appellees admitted
that TDCJ “classification policy and practice is to place buffer cells between
members of rival disruptive groups if they are to be housed in the same area.” 
However, there is nothing in the record to indicate that a buffer cell was
placed between Salazar and Basden.  In addition, Appellees admit that TDCJ
policy AD-03.50[11]
requires prison guards to “thoroughly” search dayrooms and recreational
areas “prior to and after each use”, to “thoroughly” strip-search
inmates “before and after recreation or leaving the assigned cellblock,” and to
place inmates “in mechanical restraints (e.g., handcuffs)” whenever
“escorting inmates to and from their assigned cells in administrative
segregation areas.”  Appellees also admit: (1) inmates in the administrative
segregation area “were allowed under specific circumstances to walk to and from
recreation and showers unescorted by correctional officers and without
handcuffs”; and (2) inmates “were not always strip-searched prior to being
allowed out of their cells for recreation and showers.”[12] 
Appellees could neither admit nor deny that Basden was strip-searched on the
date of the alleged assault.

            From the evidence including TDCJ’s own
administrative policies for security in the administrative segregation areas of
its prisons, Appellees failed to conclusively establish that public policy
considerations weigh against imposition of a legal duty in this instance.

            To summarize, TDCJ and its
officials and employees who exercise supervisory authority in its prisons have
a “special relationship” with TDCJ inmates and thus owe a duty of reasonable
care to protect inmates from harm when that harm is reasonably foreseeable. 
Here, genuine issues of material fact remain on the question of whether Basden
presented “an unreasonable and foreseeable risk of harm to [Salazar].”  See Tex. Home Mgmt., 89 S.W.3d at 39.

            Therefore, the court erred
by granting Appellees’ summary-judgment motion on the issue of duty but
correctly denied Salazar’s motion for partial summary judgment insofar as it
was premised on this issue.  Accordingly, we overrule Salazar’s second issue
which challenges the court’s denial of his motion for partial summary judgment.

Official Immunity

            Salazar also contends in
his first issue that the court erred by granting Appellees’ summary-judgment
motion on the issue of official immunity because Appellees failed to
conclusively establish that (1) Salazar seeks to hold them liable for a failure
to perform discretionary duties or (2) they were acting in good faith.

            Official immunity is an
affirmative defense.  See Ballantyne v. Champion Builders, Inc., 144
S.W.3d 417, 424 (Tex. 2004); City of Lancaster v. Chambers, 883 S.W.2d 650,
653 (Tex. 1994).  When a defendant is
the movant and relies on an affirmative defense, the defendant must
conclusively establish each element of that affirmative defense to prevail.  Walker v. Harris, 924 S.W.2d 375, 377 (Tex. 1996); Moon v. Lesikar, 230
S.W.3d 800, 802-03 (Tex. App.—Houston [14th Dist.] 2007, pet. denied); Johnson
v. Baylor Univ., 188 S.W.3d 296, 300 (Tex. App.—Waco 2006, pet. denied).

            A public official or employee is entitled to
official immunity when a plaintiff seeks to hold him liable for (1) acting
within the scope of his authority (2) in performing discretionary duties (3) in
good faith.  See Ballantyne, 144 S.W.3d at 424; Chambers, 883
S.W.2d at 653.  By contrast, a defendant is not entitled to official immunity
for the failure to perform (or negligent performance) of ministerial duties.  See Harris County v. Gibbons, 150 S.W.3d 877, 886-87 (Tex. App.—Houston [14th
Dist.] 2004, no pet.); Myers v. Doe, 52 S.W.3d 391, 396 (Tex. App.—Fort Worth 2001, pet. denied).

Ministerial acts are those for which “the law
prescribes and defines the duty to be performed with such precision and
certainty as to leave nothing to the exercise of discretion or judgment.”  Comm’r
of the Gen. Land Office v. Smith, 5 Tex. 471, 479 (1849).  If the public
official must obey an order, without having any choice in complying, the act is
ministerial.  If an action involves personal deliberation, decision, and
judgment, however, it is discretionary.

 

Ballantyne, 144 S.W.3d at 425 (citing Chambers, 883
S.W.2d at 654) (other citation omitted).  

            The distinction between
discretionary and ministerial acts is often one of degree because any official
act that is ministerial still requires the exercise of some discretion.  Myers,
52 S.W.3d at 396; Enriquez v. Khouri, 13 S.W.3d 458, 462 (Tex. App.—El Paso 2000, no pet.).  Thus, mandatory language in a statute or policy does
not, standing alone, make an act ministerial.  Titus Reg’l Med. Ctr. v.
Tretta, 180 S.W.3d 271, 275 (Tex. App.—Texarkana 2005, no pet.); Eakle
v. Tex. Dep’t of Human Servs., 815 S.W.2d 869, 876 (Tex. App.—Austin 1991,
writ denied).

            Here, Appellees’
summary-judgment evidence focuses on TDCJ’s general policies and procedures for
inmate housing assignments.  By contrast, Salazar’s summary-judgment response
addresses admitted violations of TDCJ policy AD-03.50 which he contends are
failures to perform ministerial duties.  The pertinent policies are as follows:

IX.       Segregation
Security Measures:  Each warden shall immediately take all necessary steps
to insure that the safety and security of inmates and staff in segregation is
maximized.

 

.  .  .  .

 

D.        Prior to and
after each use, the shower areas, dayrooms, inside recreational areas and
outside recreation area are to be thoroughly searched.  Recreation
activities are to be confined to the hours from 0700-2200 (7 a.m.-10 p.m.). 
Inmates shall be recreated before showering.

 

E.         Inmates in
segregation shall be thoroughly strip-searched before and after
recreation or leaving the assigned cellblock.

 

X.        Administrative
Segregation Escort Procedures:  The following procedures are to be followed
in escorting inmates to and from their assigned cells in administrative
segregation areas:

 

A.        In order to
prevent injury to others or serious property damage, any Group A inmate in
administrative segregation shall be escorted as follows:

 

1.         Anytime such
an inmate is transported from his assigned cell, the inmate is to be placed in
mechanical restraints (e.g., handcuffs).

 

2.         The
mechanical restraints are to be placed on the inmate before opening the door of
the cell.  The inmate is to be directed to place his arms behind and through
the foodslot for handcuffing.  There shall be one officer required to escort
administrative segregation inmates within the segregation area.  However, there
must be at least two officers present when escorting an inmate outside of the
segregation area.

 

.  .  .  .

 

4.         Before being
returned to their assigned administrative segregation cells, inmates shall be
placed in mechanical restraints.

 

            Appellees admit several
violations of these policies including the following: (1) inmates in the
administrative segregation area “were allowed under specific circumstances to
walk to and from recreation and showers unescorted by correctional officers and
without handcuffs”; and (2) inmates “were not always strip-searched prior to
being allowed out of their cells for recreation and showers.”  Appellees could
neither admit nor deny that Basden was strip-searched on the date of the
alleged assault.

            We hold as a matter of law that the
violated policies establish ministerial duties because they prescribe and
define the duties “to be performed with such precision and certainty as to
leave nothing to the exercise of discretion or judgment.”  See Ballantyne,
144 S.W.3d at 425; Chambers, 883 S.W.2d at 654.  By Appellees’ own
admissions, prison employees failed to comply with these ministerial duties. 
Thus, a genuine issue of material fact remains on the question of whether
prison employees complied with these ministerial duties on the date of the
alleged assault.

            Because Appellees failed to
conclusively establish that Salazar seeks to hold them liable for a failure to
perform discretionary duties, the court erred by granting their
summary-judgment motion insofar as the motion was premised on official
immunity.  Accordingly, we sustain Salazar’s first issue.

Conclusion

Appellees failed to conclusively establish that
Basden did not present “an unreasonable and foreseeable risk of harm” to
Salazar.  They likewise failed to conclusively establish that Salazar seeks to
hold them liable for a failure to perform discretionary duties.  Accordingly,
they were not entitled to summary judgment on the issues of legal duty or
official immunity.  Thus, we reverse the judgment and remand this cause to the
trial court for further proceedings consistent with this opinion.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

(Chief Justice Gray concurs in the result with a
note as follows: “I cannot join the majority’s broad sweeping statements that
are unnecessary in the disposition of this appeal of a summary judgment,
therefore I join only the result.  I cannot join the judgment because it makes
reference to the majority’s opinion which I cannot join.”)

Reversed and remanded

Opinion delivered and
filed February 27, 2008

[CV06]

 









[1]
              Salazar’s lawsuit has been
pending since 1994, and there have been four prior proceedings in this Court
related to his suit.

 





[2]
              This was Salazar’s live
pleading on file when Appellees filed their summary-judgment motion.

 





[3]
              Section 501.019 permits the
State to deduct the cost of incarceration as a setoff against any adverse judgment
rendered in an inmate’s favor.  See Tex.
Gov’t Code Ann. § 501.019 (Vernon 2004).





[4]
              Although Appellees’ motion
refers to both subsections (c) and (i) of Rule of Civil Procedure 166a, which
govern traditional and no-evidence summary-judgment motions respectively, their
motion does not delineate in any manner between traditional and no-evidence
claims.  See Tex. R. Civ. P. 166a(c),
(i).  Salazar cites the standard of review applicable to traditional
summary-judgment motions in his brief, and Collins and Garner do not dispute
that this is the applicable standard.  Therefore, we construe their motion as
one for a traditional summary judgment.  See Waite v. Woodard, Hall &
Primm, P.C., 137 S.W.3d 277, 281 (Tex. App.—Houston [1st Dist.] 2004, no
pet.); Amouri v. Sw. Toyota, Inc., 20 S.W.3d 165, 168 (Tex.
App.—Texarkana 2000, pet. denied); see also Binur v. Jacobo, 135 S.W.3d 646,
650-51 (Tex. 2004).

 





[5]
              Salazar apparently abandoned
his claims that Appellees are liable for housing him in the administrative
segregation unit with Basden despite knowing that they were members of rival
“disruptive groups.”





[6]
              The Supreme Court did not hold
that the facility in fact had such a duty but instead held that the facility’s
summary-judgment evidence failed to conclusively establish that it did not have
such a duty.  Tex. Home Mgmt., Inc. v. Peavy, 89 S.W.3d 30, 39 (Tex. 2002).





[7]
              See B.R. v. State, 144
P.3d 431, 435 (Alaska 2006); Wertheim v. Pima County, 211 Ariz. 422, 122 P.3d 1, 3-4 (Ariz. Ct. App. 2005); Dep’t of Health & Rehabilitative
Servs. v. Whaley, 574 So. 2d 100, 103-04 (Fla. 1991); Thomas v. Williams,
105 Ga. App. 321, 124 S.E.2d 409, 412-13 (1962); Haworth v. State,
60 Haw. 557, 592 P.2d 820, 824-25 (1979); Barnard v. State, 265 N.W.2d
620, 621 (Iowa 1978); Jackson v. City of Kansas City, 263 Kan. 143, 947 P.2d 31, 40-41 (1997); Rowan County v. Sloas, 201 S.W.3d 469, 479 (Ky.
2006); Brou v. Orleans Parish Criminal Sheriff’s Office, 897 So. 2d 817,
819-20 (La. Ct. App. 2005); Cooney v. Hooks, 535 N.W.2d 609, 611 (Minn. 1995); Daniels v. Andersen, 195 Neb. 95, 237 N.W.2d 397, 400 (1975); Butler
v. Bayer, 168 P.3d 1055, 1063-64 (Nev. 2007); Murdock v. City of Keene,
137 N.H. 70, 623 A.2d 755, 756 (1993); Harris v. State, 61 N.J. 585, 297
A.2d 561, 563 (1972); Doe v. City of Albuquerque, 96 N.M. 433, 631 P.2d
728, 733 (N.M. Ct. App. 1981); Sanchez v. State, 99 N.Y.2d 247, 784
N.E.2d 675, 678 (2002); King v. Durham County Mental Health Developmental
Disabilities & Substance Abuse Auth., 113 N.C. App. 341, 439 S.E.2d
771, 774-75 (1994); Clemets v. Heston, 20 Ohio App. 3d 132, 485 N.E.2d
287, 291-92 (1985); Keeland v. Yamhill County, 24 Ore. App. 85, 545 P.2d
137, 139 (1976); Saunders v. State, 446 A.2d 748, 750 (R.I. 1982); Blakey
v. Boos, 83 S.D. 1, 153 N.W.2d 305, 307 (1967); Jankee v. Clark County,
235 Wis. 2d 700, 612 N.W.2d 297, 321 (2000); accord Cortes-Quinones v. Jimenez-Nettleship,
773 F.2d 10, 15 (1st Cir. 1985) (applying law of Puerto Rico); Frett v.
Virgin Islands, 839 F.2d 968, 975-76 (3d Cir. 1988) (applying law of Virgin
Islands), overruled in part on other grounds by Ngiraingas v. Sanchez,
495 U.S. 182, 110 S. Ct. 1737, 109 L. Ed. 2d 163 (1990); Matthews v. Dist.
of Columbia, 387 A.2d 731, 734 (D.C. 1978); see also Marshall v. Winston,
239 Va. 315, 389 S.E.2d 902, 904 (1990) (recognizing duty to prevent inmate
released from jail from harming foreseeable victims but holding that plaintiff
failed to allege or show that sheriff knew or should have known that inmate
intended to attack plaintiff); Rayfield v. S.C. Dep’t of Corrections,
297 S.C. 95, 374 S.E.2d 910, 918 (1988) (“not questioning” the concept of duty
set out in Restatement sections 314 through 320 but holding that special
relationship ended when inmate was released from custody).

 





[8]
              See Tarasoff v. Regents of
the Univ. of Cal., 17 Cal. 3d 425, 551 P.2d 334, 343-44 (1976) (therapist
who learned that patient intended to harm another owed duty to use reasonable
care to protect intended victim); Felger v. Larimer County Bd. of County
Comm’rs, 776 P.2d 1169, 1172 (Colo. Ct. App. 1989) (special relationship
between sheriff and probationer injured in community-service program);
Assoc. Health Sys., Inc. v. Jones, 185 Ga. App. 798, 366 S.E.2d 147, 150-51
(1988) (nursing home owed duty to prevent one resident from assaulting
another); Sterling v. Bloom, 111 Idaho 211, 723 P.2d 755, 769-70 (1986)
(probation officer has legal duty to exercise reasonable care to control
conduct of probationer and prevent harm to third party); State v. Johnson,
108 Md. App. 54, 670 A.2d 1012, 1017-18 (1996) (special relationship between
state and inmate established “duty to provide reasonable health care”); Knight
v. State, 99 Mich. App. 226, 297 N.W.2d 889, 894 (1980) (social worker who
knew person in her care posed danger had a duty “to exercise reasonable care to
control the third person and prevent him from harming others”); see also
Rollins v. Petersen, 813 P.2d 1156, 1159 (Utah 1991) (acknowledging “the
general applicability in Utah of the ‘special relation’ analysis described in
sections 314 through 320 of the Restatement”).

 





[9]
              The common law duty discussed
in this paragraph is not to be confused with the constitutional duty imposed on
prison officials by the Eighth Amendment “to protect prisoners from violence at
the hands of other prisoners.”  See Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) (quoting Cortes-Quinones v.
Jimenez-Nettleship, 842 F.2d 556, 558 (1st Cir. 1988)).  Suits premised on
this constitutional duty are usually brought under title 42, section 1983 of
the United States Code.  See, e.g., Johnson v. Johnson, 385 F.3d 503
(5th Cir. 2004); Horton v. Cockrell, 70 F.3d 397 (5th Cir. 1995) (per
curiam); City of Waco v. Hester, 805 S.W.2d 807, 815-17 (Tex. App.—Waco
1990, writ denied).

 





[10]
            Appellees also admitted that the
term “disruptive group” is a synonym for a “gang.”





[11]
          Appellees admitted that the copy
of Administrative Directive No. AD-03.50 relied on by Salazar “is a verbatim
excerpt” of the version of AD-03.50 applicable on the date of the alleged
assault.

 





[12]
            Appellees could neither admit
nor deny that the recreation area had been searched on the date of the alleged
assault.